[No. D009094. Fourth Dist., Div. One. Sept. 14, 1989.]

KAREN ANDERSON et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent.

**COUNSEL**

Colleen Fahey Fearn, Anson B. Levitan and Kate Yavenditti for Petitioners.

David A. Niddrie and Procopio, Cory, Hargreaves & Savitch for Respondent.

**OPINION**

**WIENER, Acting P. J.**—Petitioners Karen Anderson, Theresa Schommer, Mona Asuncion, Theresa Jacobo and Stacy Cope are custodial parents who receive aid to families with dependent children (AFDC) but are exempt from work requirements under federal and state welfare law. ██ ██ ██ ██ They contend the Family Law Division of the San Diego Superior Court lacks power and authority to disregard their exemptions and order them to initiate job searches or "voluntarily" enter the state workfare program.[1] We conclude the court's procedure for imposing the job search

---

[1] As used in this opinion the term "workfare" generally describes programs authorized by state and federal statute to encourage unemployed welfare recipients to return to the work force. These programs typically involve counseling, job training, job search or placement,

orders violated the petitioners' due process rights. We therefore grant the petition for a peremptory writ of mandate and direct the superior court to vacate its job search orders.[2] after the San Diego Superior Court ordered petitioners to initiate job searches.

## FACTUAL AND PROCEDURAL BACKGROUND

We briefly outline the different factual and procedural circumstances which brought each petitioner before the family law court.

### Karen Anderson

Ms. Anderson appeared without counsel as a witness in a child support action initiated by the County of San Diego against her estranged husband to obtain reimbursement for aid Anderson receives for the benefit of the couple's four-year-old child. (County of San Diego v. Shedoudy, Super. Ct. No. D259450.) Anderson informed the court she was unemployed but registered as a full-time student at San Diego State University. She cares for her child and collects $535 per month from AFDC. Federal and state law exempt Anderson from requirements that she participate in California's work program, Greater Avenues for Independence (GAIN), because she has a child under the age of six.

Based on Ms. Anderson's testimony, the court ordered her husband to pay $300 per month in child support to the Department of Revenue and Recovery. It also found that Anderson had not met her own support obligation by collecting AFDC. The court ordered her to engage in five job searches each week until she obtained a full-time job or, in the alternative, to voluntarily participate in GAIN.

### Theresa Schommer

Ms. Schommer appeared without counsel seeking a default dissolution of her nine-year marriage. (Schommer v. Schommer, Super. Ct. No. D244671.) In September 1988 she testified in a hearing to determine the amount of support to be paid by her husband for the couple's nine-year-old son.

---

community service and various support services such as child care and reimbursement for transportation to and from work.

[2] Although the petitioners' request is entitled "Petition for Writ of Review or Other Appropriate Extraordinary Relief," the prayer for relief seeks a peremptory writ of mandate declaring the orders invalid and prohibiting issuance of job search orders in the future. Accordingly, we elect to treat the request for extraordinary relief as a petition for writ of mandate. (See discussion, post, at pp. 1327-1329.)

Ms. Schommer informed the court that she collected AFDC in the amount of $535 per month, attended junior college full-time, worked part-time and reported all her earnings to welfare. Although required by statute to register for GAIN, she is not required to participate in the work program so long as she maintains satisfactory grades in the full-time self-initiated training program at junior college.

The court issued a final judgment of dissolution and ordered Mr. Schommer to pay $250 per month in child support directly to the Department of Revenue and Recovery. The court also found that Ms. Schommer was not meeting her obligation to provide support for her son by receiving AFDC assistance. It ordered her to engage in five job searches each week until she obtained a full-time job or, in the alternative, to voluntarily participate in GAIN.

*Mona Asuncion*

A final judgment of dissolution entered in May 1978 required Ms. Asuncion's husband to pay $150 per month in spousal support and $150 per month in child support for the couple's two children. (Asuncion v. Asuncion, Super. Ct. No. D111253) In July 1988 Mr. Asuncion asked the court to terminate his spousal support obligation. At the hearing on the order to show cause the court inquired into the parents' abilities to provide support for their children.

Ms. Asuncion testified she was unemployed and received $663 per month in AFDC assistance on behalf of the two children fathered by Mr. Asuncion, now ages 13 and 15. She also informed the court she had a six-month-old child fathered by another man. The baby was regularly supported by its father and did not receive AFDC. Ms. Asuncion requested that she not be required to conduct a job search because she did not have the money to pay for babysitting.

The court ordered Mr. Asuncion to pay $300 per month in child support to the Department of Revenue and Recovery. It also found that Ms. Asuncion had not met her obligation to provide adequate support for her children. The court ordered Ms. Asuncion to conduct five job searches per week until she obtained employment or was otherwise excused from the job search requirement.

*Theresa Jacobo*

The Jacobo marriage ended with a final judgment of dissolution in August 1982. (Jacobo v. Jacobo, Super. Ct. No. D170929.) The court ordered Ms. Jacobo's husband to pay $200 per month in support of the couple's son.

The circumstances of Ms. Jacobo's July 12, 1988, appearance in family court are unclear. However, at that hearing she informed the court that she was the unemployed mother of two children, ages eight and three.[3] She also stated she was receiving AFDC in the amount of $633 per month, but was exempt from workfare requirements because she had a child under the age of six.

The court found that Jacobo was not meeting her obligation to provide support for her children by receiving AFDC and it was in the best interests of Ms. Jacobo and her two children for her to seek and obtain full-time employment. The court ordered Jacobo to conduct five job searches per week until she obtained employment or was otherwise excused from the job search requirement. In the alternative, the court provided that Ms. Jacobo could voluntarily participate in GAIN.

*Stacy Cope*

Ms. Cope filed for dissolution on December 3, 1987. (Cope v. Cope, Super. Ct. No. D251662.) Her husband did not appear at the August 2, 1988, hearing on child support and was ordered to pay $250 per month to the Department of Revenue and Recovery in support of the couple's three-and-a-half-year-old daughter.

Ms. Cope informed the court that she was unemployed and receiving $535 per month from AFDC. Cope is statutorily exempt from requirements to enroll in GAIN because she has a child under the age of six.

The court found that Ms. Cope was not meeting her obligation to provide support for her child by receiving AFDC and that it was in the best interests of Ms. Cope and her child for her to seek and obtain regular full-time employment. The court ordered her to perform five job searches per month until she obtained full-time employment or was otherwise excused from the job search requirement. She could, in the alternative, voluntarily participate in GAIN.

*The Job Search Orders*

Karen Anderson's order is typical of the findings and orders received by the remaining four petitioners after they appeared in the family law court. It reads in relevant part: "On the basis of the above findings of fact, the Court makes the following conclusions of law:

---

[3] It is also unclear from the record whether the three-year-old child was fathered by Jacobo's ex-husband. The 1982 petition for dissolution listed only one child of the marriage.

"1.  Karen Anderson has a legal obligation to support her child.

"2.  Karen Anderson has not met her obligation to support her child by receiving AFDC and failing to seek employment.

"3.  As the Court has found that neither Karen Anderson nor the child is physically or mentally impaired, Karen Anderson has no legitimate reason for not seeking employment.

"4.  It is in the best interests of Karen Anderson and her child for her to seek and obtain regular full-time employment.

"The Court, having made the above findings of fact and conclusions of law, orders as follows:

"It Is Hereby Ordered that Karen Anderson engage in five job searches each week, commencing with the week of September 19, 1988, and present proof of her search to the Court on October 31, 1988, at 1:45 p.m., and that, absent obtaining full-time employment, she will be required to continue to seek employment and report to the Court on subsequent dates until she obtains a full-time job or is otherwise excused from the job search requirement by the Court; in the alternative to conducting the job search, Karen Anderson may voluntarily enroll in the AFDC GAIN program and present proof of such enrollment to the Court on October 31, 1988, at 1:45 p.m.

"It Is Further Ordered that this order shall be stayed until November 22, 1988, to allow Karen Anderson to seek appeal of this order to the Court of Appeal, . . ." The petition alleges that in the event the petitioners failed to appear to report on their job searches, the court would request the district attorney "to advise the welfare department that they [were] not cooperating and that their grants should therefore be reduced."

DISCUSSION

I

■■■  We begin by rejecting the respondent court's contention that the petitioners' claim for extraordinary relief is not properly before us. First, the court maintains the record is inadequate. It also asserts the petitioners failed to exhaust their administrative remedies before the Department of Social Services (DSS) and, in any event, have an adequate remedy at law through the ordinary appeal process. Finally, the court contends the

petitioners' claims are premature because there is no evidence their AFDC benefits are in any immediate danger.

The petitioners' challenge to the court's jurisdiction and authority to issue job search orders involves legal issues which are clearly presented on the face of the court's supplemental orders. Although the record in this type of proceeding should "ordinarily" include written motions and opposition, points and authorities, relevant pleadings or reporter's transcripts in addition to the dispositive order (*Sherwood* v. *Superior Court* (1979) 24 Cal.3d 183, 186 [154 Cal.Rptr. 917, 593 P.2d 862]), here there were no motions or pleadings which raised the legal issues now in question and no factual or evidentiary issues in dispute. We therefore conclude the petition provides "a record sufficient to permit review." (*Ibid.*)

There is no basis for the court's assertion that the petitioners are required to exhaust their administrative remedies. Although the federal and state welfare scheme provides for a hearing procedure (42 U.S.C. § 602(a)(4) and (9); Welf. & Inst. Code, §§ 10950 et seq. and 11320.65), these procedures are limited to appeals of adverse actions taken by DSS. DSS has no authority to review superior court orders.

Although the job search orders are appealable as orders made after judgment (Code Civ. Proc., § 904.1, subd. (b)), we nonetheless conclude petitioners' claims warrant extraordinary relief because " 'the issues presented are of great public interest and must be resolved promptly.' " (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 675 [94 Cal.Rptr. 279, 483 P.2d 1231], quoting *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593]; *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) The authority of the superior court to issue job search orders to these petitioners is a matter of public interest. The question also deserves our immediate attention as an issue of first impression. ■ "Notwithstanding [the well-recognized] limitations on the availability of prerogative writs, the Supreme Court has repeatedly recognized the intervention of an appellate court may be required to consider instances of a grave nature or of significant legal impact, or to review questions of first impression and general importance to the bench and bar where general guidelines can be laid down for future cases." (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 129 [142 Cal.Rptr. 325], fn. omitted.) ■ In addition, the petition alleges that job search orders entered against the five petitioners are representative of orders the court has entered against hundreds of women in San Diego County who collect AFDC. The issuance of a writ of mandate is appropriate to prevent a multiplicity of appeals raising the identical issue. (*People* v. *Superior Court* (1970) 13 Cal.App.3d 672, 676 [91 Cal.Rptr. 651].)

The respondent court suggests that, apart from the question of whether there is an adequate remedy at law, the petition is not ripe for review until DSS acts to reduce the amount of petitioners' AFDC grant in response to the court's "noncooperative referral." We believe the job search orders themselves—not the referrals to the district attorney—have the potential to directly reduce the amount of petitioners' AFDC benefits[4] and raise critical due process issues to be determined in this proceeding. Accordingly, we conclude petitioners' claims are not premature.

## II

■ It is well established that due process issues arise when an AFDC recipient's benefits may be adversely affected by state action. In *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011] the United States Supreme Court held that due process required timely and adequate notice and an effective opportunity to be heard before the state could terminate AFDC benefits. (*Id.* at pp. 267-270 [25 L.Ed.2d at pp. 298-300].) "The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." (*Id.* at pp. 268-269 [25 L.Ed.2d at pp. 299-300].) ■ While we acknowledge that notice and the opportunity to be heard are not constitutionally required in cases where state action tangentially impacts AFDC recipients' right to collect benefits, we conclude the court's procedure was inadequate here.

■ *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893] sets forth three factors to consider in determining the level of due

---

[4] AFDC benefits are reduced by earned income. The Department of Social Services Manual of Policies and Procedures (MPP) sets forth the formula for calculating the effect of earned income on AFDC benefits. Earned income does not offset ADFC benefits on a dollar for dollar basis. Monthly earned income is reduced by 1) a $75 standard work expense deduction (MPP, § 44-113.214), 2) actual child care expenses up to $160 (*id.* at § 44-113.215), and 3) a work incentive deduction of $30 plus one third the remaining earned income amount for the first four months and $30 for the next eight months (*id.* at §§ 44-113.216 and .217) and the remaining net nonexempt earned income subtracted from the minimum basic standard of adequate care (MBSAC). (*Id.* at §§ 44-113.21 and .22.) Based on the MPP formula, part-time work at minimum wage will result in the loss of some AFDC benefits. A family's food stamps may also be terminated or reduced with the introduction of earned income. (See Welf. & Inst. Code, § 18901; 7 U.S.C. § 2014(a).)

There is no provision for paid child care for job searches conducted apart from the GAIN program. (See Welf. & Inst. Code, § 11320.3, subds. (e)(1) and (f).) Presumably, if petitioners are required to pay for child care in order to conduct the job searches ordered by the court, those costs will reduce the amount of AFDC benefits available for other family expenses.

A single parent with two minor children cannot be considered for AFDC benefits if his or her gross monthly earned income exceeds 185 percent of the MBSAC or $1,227. (MPP, §§ 44-207.112 and .113.) Loss of all AFDC benefits also results in the loss of Medi-Cal benefits. (See Welf. & Inst. Code, §§ 14005.1 and 14005.8.)

process required in a given factual setting: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Id.* at p. 335 [47 L.Ed.2d at p. 33].) The California Supreme Court emphasizes a fourth factor—that persons subjected to deprivatory governmental action be treated with respect and dignity. (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 268 [158 Cal.Rptr. 316, 599 P.2d 622].) " 'For government to dispose of a person's significant interests without offering him a chance to be heard is to risk treating him as a nonperson, an object, rather than a respected, participating citizen.' [Citation.]" (*Id.* at pp. 267-268.)

■ Applying the *Eldridge* analysis, it is clear that AFDC benefits "are a matter of statutory entitlement for persons qualified to receive them" and termination of those benefits involves "important rights." (*Goldberg* v. *Kelly, supra,* 397 U.S. at p. 262 [25 L.Ed.2d at p. 296].) ■ In addition to having a significant private interest in avoiding reduction or termination of their AFDC benefits, the petitioners are also legitimately concerned with the effect of the job search orders on their ability to care for their preschool aged children or to attend school. Indeed, the historical exemption from participation in workfare programs is based on a policy decision by Congress that it is in the best interest of preschool age children to be cared for by a parent or relative.[5]

The second *Eldridge* factor—the risk of erroneous deprivation—goes to the heart of the due process problem in this case. The court did not inform these custodial parents of their potential obligation to provide support in excess of that provided by the AFDC benefits before they appeared in family law court in matters pertaining to their former spouses' support obligations. Nor did the petitioners receive notice of the criteria employed by the court in determining who would be subject to the job search orders. Lacking timely and adequate notice, petitioners had no opportunity to prepare a defense against the court's action. Nor were the petitioners given an opportunity to seek advice of counsel. We reject the court's suggestion that the DSS handbook on child support provided the necessary notice regarding the court's job search program. Nowhere does the handbook mention a custodial parent's obligation to seek employment or face reduction or loss of AFDC benefits. Here the lack of notice creates a real risk that

---

[5] (See conc. opn., *post,* at pp. 1333-1334.)

petitioners and others similarly situated will be unlawfully deprived of benefits to which they are entitled.

The third factor concerns the governmental interest, including consideration of the fiscal and administrative burdens an improved procedure would entail. Of course, the family law court is interested in ensuring adequate support for children following their parents' separation or dissolution of marriage. However, we question whether the court is properly concerned with taking affirmative action to carry out the purposes of AFDC in light of the structure of the federal and state welfare system and the clear designation of DSS as the single state agency to administer the program in California. In any event, these governmental interests would not be undermined by the requirement of adequate and timely notice. The court concedes that a remedial program could be implemented easily to provide the required notice and meaningful opportunity to be heard.

Much of the outrage expressed by the petitioners and others over the court's job search orders relates to the dignity interest recognized under the California Constitution. Without belaboring the point, we can understand how the court's actions here could be viewed as "unfair" and "arbitrary." At the very least it is counterproductive to require a custodial parent who is caring for a preschool child, attending college and/or working part-time to cease relying on AFDC benefits and find a full-time job. Consistent with the interest in fostering dignity and respect, legitimate efforts within AFDC guidelines to improve skills and education should be encouraged, not thwarted.[6] We therefore hold that the court violated the petitioners' due process rights when it failed to provide adequate and timely notice of the family law procedure through which their AFDC benefits could be reduced or lost.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its job search orders of October 11, 1988.

Todd, J., and Huffman, J., concurred.

---

[6] In reaching the conclusion that petitioners are entitled to due process protection, we reject the court's argument, based on *Bowen* v. *Gilliard* (1987) 483 U.S. 587 [97 L.Ed.2d 485, 107 S.Ct. 3008], that its job search order did not, in fact, adversely affect the petitioners' AFDC benefits. *Gilliard* involved definitional changes in the AFDC program which Congress enacted as part of the Deficit Reduction Act of 1984. The court concluded Congress had the prerogative to define the scope of the entitlement program. (*Id.* at pp. 604-605 [97 L.Ed.2d at p. 503, 107 S.Ct. 3019].) Here, in contrast, the court's job search orders were issued to persons Congress and the California Legislature specifically exempted from participation in workfare.

**WIENER, Acting P. J.,** Concurring.—I write this separate concurrence to an opinion I have authored for the court (see, e.g., *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 595 [150 Cal.Rptr. 435, 586 P.2d 916]) because I believe there are additional legal impediments to the superior court's authority under the federal and state statutory scheme to issue job search orders to custodial parents collecting aid to families with dependent children (AFDC) who are exempt from workfare requirements by virtue of state and federal welfare provisions.

The purpose of the AFDC program is to "[encourage] the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, . . ." (42 U.S.C. § 601.)

The program " 'is based on a scheme of cooperative federalism.' " (*Shea* v. *Vialpando* (1974) 416 U.S. 251, 253 [40 L.Ed.2d 120, 125, 94 S.Ct. 1746], quoting *King* v. *Smith* (1968) 392 U.S. 309, 316 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128].) "It is financed in large measure by the Federal Government on a matching-fund basis, and participating States must submit AFDC plans in conformity with the Act and the regulations promulgated thereunder by the Department of Health, Education, and Welfare (HEW). (*Ibid.* [40 L.Ed.2d at p. 125]; 42 U.S.C. § 602(b).) The states administer the program and are given broad discretion in determining both the standard of need and the level of benefits. (*Ibid.*)

To be approved the state must designate "a single State agency to supervise the administration of the plan." (42 U.S.C. § 602(a)(3).) The state agency is prohibited from delegating "its authority for exercising administrative discretion in the administration or supervision of the plan, including the issuance of policies, rules, and regulations on program matters." (45 C.F.R. § 205.100(b)(1).) Other state and local agencies are expressly prohibited from reviewing, changing or disapproving any administrative decision of the state agency designated to administer the AFDC program. (45 C.F.R. § 205.100(b)(3).) Although the states may determine the level of benefits without federal interference, states have no discretion with regard to eligibility for AFDC and may not create conditions of eligibility in addition to those created by Congress. (42 U.S.C. § 601 et seq.; see, e.g., *Miller* v. *Youakim* (1979) 440 U.S. 125, 133 [59 L.Ed.2d 194, 201-202, 99 S.Ct. 957].)

California has designed the Department of Social Services (DSS) as "the single state agency with full power to supervise every phase of the administration of public social services . . . for which grants-in-aid are received from the United States government . . . in order to secure full compliance with the applicable provisions of state and federal laws." (Welf. & Inst. Code, § 10600.) The DSS must establish statewide standards for the administration of state or federally assisted public social services "which define and control the conditions under which such public social services may be granted or refused." (Welf. & Inst. Code, § 10604, subd. (b).) The director of DSS is the "only person authorized to adopt regulations [and] orders . . . to implement [and] interpret the law enforced by the department." (Welf. & Inst. Code, § 10554.) "The state is responsible for maintaining uniformity in the public social service programs . . . ." (Welf. & Inst. Code, § 11050.) San Diego County is an agent of DSS and must administer the AFDC program in conformity with DSS regulations. (Welf. & Inst. Code, §§ 10800, 11209.)

Federal and state law establishes workfare requirements for persons receiving AFDC. However, both statutory schemes provide exemptions from job search requirements for certain AFDC recipients.

In 1967 Congress enacted the Work Incentive Program (WIN), the first AFDC work program, to create greater incentives for AFDC recipients to become employed. (Pub.L. 90-248 (1967) § 204; 1967 U.S. Code & Cong. Admin. News at pp. 1002-1012; 1967 U.S. Code and Cong. Admin. News at p. 2837; 42 U.S.C. § 602(a)(19).) From WIN's inception Congress was "deeply concerned" with the protection of children and the Senate committee stressed that certain recipients must not be considered appropriate for the program. (1967 U.S. Code and Admin. News at p. 2984.) Among those exempted were mothers caring for one or more preschool age children if the mother's presence was necessary and in the best interest of the child. (*Ibid.*) Exempt AFDC recipients could volunteer for WIN, but only if the state provided child care. (*Ibid.*) The Senate stressed that each state was responsible for carrying out the intent of Congress in implementing the WIN program. (*Ibid.*) At present an AFDC recipient is exempt from WIN if he or she is "the parent or other relative of a child under the age of six who is personally providing care for the child with only very brief and infrequent absences from the child." (42 U.S.C. § 602(a)(19)(A)(v).)[1]

---

[1] New federal legislation effective in 1989 amends 42 United States Code, section 602(a)(19) and limits the exemption for AFDC recipients with preschool age children to "the parent or other relative of a child under 3 years of age (or, if so provided in the State plan, under any age that is less than 3 years but not less than one year) who is personally providing care for the child, or . . . the parent or other relative personally providing care for a child under six years of age, unless the State assures that child care in accordance with [42 U.S.C. § 602(g)] will be guaranteed and that participation in the program by the parent or relative

California adopted the WIN program and requires registration as a condition for eligibility for AFDC. (Welf. & Inst. Code, § 11310, subd. (a).) California recognizes the same exemptions as the federal program. (Welf. & Inst. Code, § 11310, subd. (b).)

Following the passage of the Omnibus Budget Reconciliation Act of 1981 (OBRA) and a change in welfare philosophy at the federal level away from financial incentives toward work programs (see *Heckler* v. *Turner* (1985) 470 U.S. 184, 204-208 [84 L.Ed.2d 138, 152-155, 105 S.Ct. 1138]), San Diego County embarked on a major workfare program from 1982 to 1985 which required a job search followed by community work experience for nonexempt AFDC recipients. (Welf. & Inst. Code, former § 11311.)

In 1985 California adopted the Greater Avenues for Independence Act (GAIN), a statewide experiment in work programs for welfare recipients. (Welf. & Inst. Code, 11320.) Each county was required to submit a GAIN plan for DSS approval with the program to be fully operational. (Welf. & Inst. Code, § 11320.2, subds. (f) and (g).) Those who participate in GAIN are provided with supportive services which include transportation and paid child care for persons with children under age 12. (Welf. & Inst. Code, § 11320.3, subd. (e)(1) and (2).) All persons required to register for WIN are required to register for GAIN. (Welf. & Inst. Code, § 11320.1.) Similarly, those recipients exempt from WIN, such as parents with primary responsibility for the care of children under six, are exempt from participation in GAIN. (Welf. & Inst. Code, §§ 11310, subd. (b)(6) and 11320.1.) In addition GAIN provides that a person who attends school full-time and has a child under six is not required to participate. (Welf. & Inst. Code, § 11320.5, subd. (a)(1).) This exemption continues as long as there is satisfactory progress in the self-initiated program. (Welf. & Inst. Code, § 11320.5, subd. (b)(5).)

In my view there is nothing in the foregoing detailed description of the federal and state statutory welfare scheme which authorizes the family law division of the superior court to issue the job search orders to AFDC recipients who are exempt from workfare requirements. Only federal and designated state agencies have the authority to administer the AFDC program. I am unable to find any statutory authority for the imposition on custodial parents of the court's own conditions of AFDC eligibility which require those parents to initiate job searches or sign up for GAIN. Indeed, the federal statute and regulations limit the discretionary role of DSS within the scheme of "cooperative federalism" to a determination of the standard

will not be required for more than 20 hours per week. . . ." (102 Stat. (100th Cong. 1988) at p. 2357.)

or need and level of benefits. Not even the state is authorized to establish its own conditions of eligibility.

I am also concerned here with the job search orders issued to Karen Anderson, Mona Asuncion, Theresa Jacobo and Stacy Cope which conflict with express exemptions from workfare set forth in 42 United States Code section 602(a)(19)(A)(v) and raise questions of federal preemption.

The court contends that pursuant to Civil Code sections 196, 206 and 242[2] parents must provide financial support for their minor children to the full extent of their ability. It says a parent's desire to pursue higher education or provide full-time care to children under school age is not sufficient to overcome the obligation to provide immediate financial support for the children. Although the Agnos Child Support Standards of 1984 establish the minimum mandatory amount of child support as the AFDC standard for the same number of children (Civ. Code, §§ 4720 and 4722), the court rejects any suggestion that a parent who receives AFDC has satisfied his or her support obligation under California law. In general the court argues there is a place within the AFDC scheme of cooperative federalism for state courts to foster the traditional state interest in domestic relations and that it has carried out its responsibilities in a manner consistent with the broad purposes of AFDC.

I acknowledge the general principles of family law that both parents have an equal responsibility to support their minor children (Civ. Code, §§ 196 and 242), child support orders can be entered against either or both parents of a minor child (Civ. Code, § 4700, subd. (a);[3] see *State of Florida* ex rel. *Dept. of Health & Rehabilitative Services* v. *Vernon* (1982) 138 Cal.App.3d 827, 830-831 [188 Cal.Rptr. 322]), job search orders are authorized by statute for noncustodial parents (Civ. Code § 4709),[4] and the court may

---

[2] Civil Code section 196, subdivision (a) provides: "The father and mother of a child have an equal responsibility to support and educate their child in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents."

Civil Code section 206 states: "It is the duty of the father, the mother, and the children of any person in need who is unable to maintain himself by work, to maintain such person to the extent of their ability."

Civil Code section 242 provides: "Every individual shall support his or her . . . child, . . . when in need."

[3] Civil Code section 4700, subdivision (a), states: "In any proceeding where there is at issue the support of a minor child or a child for whom support is authorized under Section 206, the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child."

[4] Civil Code section 4709 provides: "A court may require a parent who alleges that his or her default in an order issued pursuant to this title is due to his or her unemployment to submit to the appropriate child support enforcement agency or any other entity designated by

consider either parent's ability to earn in fashioning a child support order (Civ. Code, § 4720, subd. (e)).[5] However, here the obligation to support must be viewed in the context of federal welfare legislation. I believe the court's position in this case ignores the fundamental rule that " 'in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under *federal* AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.' " (*Carleson* v. *Remillard* (1972) 406 U.S. 598, 600 [32 L.Ed.2d 352, 355, 453, 92 S.Ct. 1932], citing *Townsend* v. *Swank* (1971) 404 U.S. 282, 286 [30 L.Ed.2d 448, 453, 92 S.Ct. 502]; see also *King* v. *Smith* (1968) 392 U.S. 309 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128].) The superior court cannot do what the state is prohibited from doing.

In *New York State Dept. of Social Services* v. *Dublino* (1973) 413 U.S. 405 [37 L.Ed.2d 688, 93 S.Ct. 2507] the Supreme Court applied preemption principles in a challenge to work rules of the New York Social Welfare Law which denied welfare assistance to certain employable persons. The court held that WIN did not entirely preempt the work rules, but remanded the case for the court to consider whether specific sections of the work rules conflicted with the federal WIN requirements. (*Id.* at pp. 421-422 [37 L.Ed.2d at p. 699].) The court noted that "[c]onflicts, to merit judicial rather than cooperative federal-state resolution, should be of substance and not merely trivial or insubstantial. But if there is a conflict of substance as to eligibility provisions, the federal law of course must control." (*Id.* at p. 423, fn. 29 [37 L.Ed.2d at p. 700].)

Here it is helpful to note that Congress has made several important policy determinations which are reflected in the present welfare system as set forth in 42 United States Code section 601 et seq. These policy determinations reflect many of the concerns shared by the several states. With regard to exemptions from workfare requirements, Congress has expressed concern for the welfare of young children (see discussion, *ante,* at pp. 1333-1334)

---

the court, including, but not limited to, the court itself, each two weeks, or at a frequency deemed appropriate by the court, a list of at least five different places he or she has applied for employment.

[5] Civil Code section 4720, subdivision (e) reads in part: "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. In this regard, the Legislature recognizes that a parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income; earning capacity, assets; and the income of his or her subsequent spouse or nonmarital partner, to the extent that the obligated parent's basic living expenses are met by the spouse or other person, thus increasing the parent's disposable income and therefore his or her ability to pay more than the mandatory minimum child support award established by this chapter."

and decided that these children should be cared for by their parents or relatives until they reach sufficient maturity to function well in day care outside the home. Thus Congress enacted the specific exemption found in 42 United States Code section 602(a)(19)(A)(v).

Obviously, Congress could not permit each of the 50 states—or the courts of those states—to modify or eliminate the exemption for parents or other relatives caring for children under the age of 6. The practical result would be the elimination of the exemption and abrogation of clear congressional policy. If there is any area requiring judicial restraint, it is where the legislative branch has defined the problem and set up a framework to solve it. (See *Bowen* v. *Gilliard* (1987) 483 U.S. 587, 595-597 [97 L.Ed.2d 485, 497-498, 107 S.Ct. 3008, 3014-3015]; *Dandridge* v. *Williams* (1970) 397 U.S. 471, 486-487 [25 L.Ed.2d 491, 502-503, 90 S.Ct. 1153].)

This is not to say that the court must excuse all AFDC recipients from their support obligations. In *County of Yolo* v. *Francis* (1986) 179 Cal.App.3d 647 [224 Cal.Rptr. 585] the court properly ordered a noncustodial parent receiving AFDC to reimburse the county for support paid to his children by a former marriage. In contrast with the case before us, there is nothing in *Yolo* to suggest the defendant was otherwise exempt from work requirements.

Obviously comments which I have expressed are unnecessary to the disposition of this case and reflect only my personal view of the applicable law. My motivation to express my views is prompted not only to alert trial courts to the many difficult issues which must be hurdled if the court is desirous of entering a valid job search order following proper notice, but particularly appropriate here in light of the extensive briefing and argument on the issues which I have discussed.