Filed 6/13/16  In re Jazmin H. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JAZMIN H., et al., Persons Coming Under the Juvenile Court Law. | B269370 |
| | (Los Angeles County Super. Ct. No. DK10808) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RAUL H.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court sustained a dependency petition alleging that Rita G.'s mental health problems and drug use placed her children at risk of harm. The children's noncustodial parent, Raul H., requested custody of the children pursuant to Welfare and Institutions Code section 361.2. The court, however, assessed his request under Welfare and Institutions Code section 361, subdivision (c)(1), concluding that placing the children with him would be a substantial danger to their safety and was therefore not appropriate.

Father argues the trial court erred in assessing his custody request under section 361, subdivision (c), which governs the circumstances under which a child may be removed from a custodial parent, rather than under 361.2, subdivision (a), which governs a noncustodial parent's request for custody of a child that has been removed from a custodial parent. We affirm, concluding that although the court applied the wrong statute, the error was harmless.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Referral and Detention*

#### 1. *Events preceding the section 300 petition*

Rita G. (mother) was living in an apartment with her 22-year-old son Samuel H., her 15-year-old daughter Jazmin H. and her two-year-old son Alfonso H. The children's presumed father, Raul H. (father), did not reside with the family and was not involved in their lives.

On April 2, 2015, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging mother had stated she "wanted to kill herself and take her children with her." Mother was placed on a psychiatric hold at an urgent care facility, where she received a urinalysis that tested positive for marijuana and methamphetamine.

On April 3, 2015, an employee of the facility informed DCFS mother was returning home. The employee explained that mother's children had not been present when she disclosed her suicidal thoughts, and that she had remained calm and cooperative throughout her hospitalization. The employee also stated that mother denied

2

having any suicidal ideations when she left the hospital, and had promised to follow through with mental health services. The employee confirmed mother had tested positive for methamphetamine and marijuana.

DCFS travelled to mother's apartment to interview the family about the referral allegations. Mother explained that the incident began after she informed her "GAIN" representative (see *Anderson v. Superior Court* (1989) 213 Cal.App.3d 1321, 1334 [describing "GAIN" as a California "work program for welfare recipients"]) she wanted mental health counseling. The representative instructed mother to fill out a questionnaire in which she disclosed she had thought about killing herself and "taking her kids with her." Mother informed DCFS that despite the statement in her questionnaire, she had never actually intended to harm her children. Mother explained that she occasionally felt "overwhelmed" by Alfonso, who exhibited "autistic symptoms" that included limited speech capabilities and an inability to follow directions. Mother stated that Alfonso was currently working with two therapists to address his issues. Mother also admitted she had been taking drugs to "cope" with her depression and loneliness.

Mother stated that she had separated from father when Jazmin was one year old. Mother briefly renewed her relationship with father in 2011, at which time she became pregnant with Alfonso. Mother reported that father had been physically and emotionally abusive toward her, and believed the family was better off without him. Father's abuse included calling mother a "worthless bitch" and throwing food at her. Mother also stated that father was not involved in the children's lives, and had never helped her support them. According to mother, father had previously "failed to reunify" with his two other children during "a prior DCFS case."

Jazmin informed DCFS mother had previously told her she "felt like committing suicide but that was in the past." Jazmin stated that mother had never actually attempted to hurt herself or made any recent statements about wanting to do so, and had never threatened to hurt Jazmin or her siblings. Jazmin explained mother was frustrated with Alfonso, who "throws toys everywhere" and "acts crazy." Jazmin had never seen mother under the influence of drugs, and did not believe that she took drugs. Jazmin also stated

3

that she had never been subjected to any physical or mental abuse, and that she felt safe around mother. Jazmin reported her father was "not involved in their lives," and that she had not seen him in more than a year.

DCFS also interviewed Samuel, who said he was not aware that mother had sought mental health services or that she felt like she wanted to hurt herself. Samuel also said he had never seen mother use drugs, but had smelled marijuana in the car. He stated that his father was not involved in the family's life, and that he did not want to have any contact with father. Samuel said he was his willing to care for his siblings with help from his mother's relatives.

### 2. Section 300 petition and detention

On April 14, 2015, DCFS filed a petition alleging Jazmin and Alfonso fell within the jurisdiction of the juvenile court under Welfare and Institution Code section 300, subdivision (b).[1] Count one of the petition alleged mother had a history of substance abuse that endangered the children's "physical health and safety." Count two alleged mother had a history of mental and emotional problems that rendered her unable to care for the children, and placed them at "risk of serious physical and emotional harm."

DCFS filed a detention report in support of the petition summarizing the results of its initial investigation. The report stated that DCFS had been unable to locate father, whose whereabouts were unknown. The report contained a printout from the "California Law Enforcement Telecommunications System" (CLETS) (see *People v. Martinez* (2000) 22 Cal.4th 106 [discussing CLETS]) showing father had prior felony convictions for drug possession (1996, 2006), robbery (1999), possession of a firearm by a felon (1999) and violation of parole (2001, 2003, 2007). The CLETS report also listed several misdemeanor convictions and juvenile matters.

In its evaluation and summary, DCFS concluded that mother's substance abuse and mental health issues, combined with Alfonso's young age and developmental

---

[1] Unless otherwise noted, all further statutory citations are to the Welfare and Institutions Code.

4

problems, placed the family at high risk of abuse. DCFS recommended that the court detain the children from mother and place them with Samuel.

At the detention hearing, the juvenile court found DCFS had provided prima facie evidence that the children were persons described in section 300 and ordered them detained. The court ordered DCFS to provide mother reunification services, and scheduled a jurisdictional hearing.

### B. *Jurisdiction and Disposition*

#### 1. *Summary of Jurisdiction/Disposition Report and the jurisdiction hearing*

On May 18, 2015, DCFS filed a "Jurisdiction/Disposition Report" stating that Jazmin and Alfonso had been placed with Samuel in mother's home. Mother had agreed to leave the home, and was residing with the maternal grandmother. DCFS reported that it had still not located father.

The jurisdiction report summarized additional interviews the agency had conducted with the family. Mother informed DCFS she had started dating father when she was 13 years old, and had remained in a relationship with him for 12 or 13 years. Mother was 16 years old when she gave birth to Samuel, and 22 years old when she gave birth to Jazmin. Mother said she ended her relationship with father because he was "always in prison." Mother also stated father was in a gang named "Street Saints." Mother reported that Alfonso had recently been diagnosed with autism, and that Jazmin had been placed in special education classes at her school. Mother expressed concern about Jazmin's mental health, explaining that she hoped the child would receive treatment and services.

DCFS reported that it had not interviewed father because he had made no effort to participate in the proceedings or visit his children. According to DCFS, its investigation revealed that father had an "extensive criminal history including felony convictions[] for possessing of a controlled substance, robbery, weapons and assault." These convictions had resulted in "several prison sentences." DCFS also reported father had "failed to reunify with two other children in a previous dependency case, [had] failed to provide for

5

the basic need of his children, and [had] failed to maintain contact for at least 6 months." DCFS concluded that although father was not "a named parent on the petition, it [would] certainly not be in the children's best interest for [father] to have unlimited access to his children." DCFS recommended that if father did choose to contact Jazmin or Alfonso, the court should only provide him enhancement services "until . . . he can address any and all issues that may place his children at risk of harm."

At the jurisdiction hearing, the court sustained the section 300 petition and ordered DCFS to provide reunification services for mother only. The court scheduled a disposition hearing for June 22, 2015.

### 2. *Summary of "Addendum/Disposition Report" and disposition hearing*

On June 22, 2015, DCFS provided an "Addendum/Disposition Report" updating the court on the agency's "attempts to notice father." The report included a "Declaration of Due Diligence" describing the agency's efforts to contact father, all of which were unsuccessful. According to DCFS, father remained "uninvolved, and disinterested in his children's lives." The agency requested that the court: (1) find due diligence as to father had been completed; (2) order the children "suitably placed"; (3) provide mother reunification services and monitored visitation; and (4) provide father enhancement services.

Following a hearing, the court entered an order removing the children from the mother's custody. The court also ordered DCFS to continue providing mother reunification services, but denied services to father based on his absence from the proceedings. (See § 361.5, subd. (b)(1) ["Reunification services need not be provided to a parent . . . when the court finds . . . That the whereabouts of the parent or guardian is unknown"].) The court scheduled a progress hearing for September 21, 2015, and a six month review hearing (see § 366.21, subd. (e)) for December 18, 2015.

6

### C. Denial of Father's Custody Request

#### 1. Father's initial request for custody

On September 21, 2015, DCFS filed an "Interim Review Report" informing the court that father had contacted the agency and said he wanted to be "involved in visiting with the children and . . . reunify with [them]." The interim report included a summary of father's prior dependency history. On October 27, 2011, the court had sustained a petition against father alleging he had failed to provide his then four- year-old daughter Sienna H. and his then two-year-old daughter Scarlett H. the "necessities of life, including food, clothing, shelter and medical treatment as father has been incarcerated on numerous occasion of which some have been drug related." The 2011 petition further alleged that father's "failure to provide" and "history of incarcera[tion]" placed the children at risk of harm. Although father was initially provided reunification services, his services were terminated in December of 2012, and the children were placed with their mother.

At the progress report hearing, the court announced it intended to authorize reunification services for father. Father's counsel, however, informed the court that father wanted immediate custody of the children. The court ordered DCFS to interview father and make a recommendation on the issue. The court scheduled a hearing for October 20, 2015.

#### 2. Court's denial of father's custody request

On October 20, 2015, DCFS provided a report summarizing its interview with father, who was then working full time and living with the paternal grandmother. Father admitted he had a "past criminal history" that included convictions for "fire arms and conspiracy." He denied, however, any prior convictions for substance abuse, which conflicted with the information in his CLETS report. In response to questions about his 2011 dependency case, father stated that he was "not present when the case got opened and felt that he should not have had to fulfill [c]ourt requirements because it was not his fault." Father stated that the juvenile court had ordered him to attend a parenting class,

7

which he had done, and to participate in a substance abuse program and drug testing. Father stated that although he had not complied with his case plan in the 2011 matter, he did intend to comply with whatever requirements the court might impose as a condition of reunifying with Jazmin and Alfonso.

DCFS reported that father's prior dependency case file indicated he had failed to comply with drug testing requirements, resulting in his termination from the drug program for "lack of compliance." Father had also failed to demonstrate compliance with an order requiring individual counseling. DCFS confirmed that the children at issue in the 2011 petition had reunified with their mother, and that father's reunification services were terminated.

DCFS recommended that Jazmin and Alfonso remain placed with Samuel, and that both parents continue to receive reunification services. DCFS also recommended that the court order father to comply with a substance abuse program with random drug testing.

At the October 20th hearing, the court informed the parties that it intended to provide father reunification services. Father's counsel objected to reunification services, explaining that father wanted the children "released to his custody and to have family maintenance services in place." Counsel argued that placement with father was appropriate because he was a "non-offending" parent under the current petition, and because no "new allegations had been brought against him." Counsel contended that "the lack of new charges against father after a lengthy investigation by the Department" was "evidence" that he had resolved all of the issues that gave rise to his dependency case in 2011.

Counsel for Alfonso and Jazmin opposed father's custody request, arguing that returning the children to his care would be improper under section 361.2: "Your honor, [under] 361.2, even if the father is non-offending, . . . there is a detriment to returning the children to his care at this time. . . . This father has an unresolved case history. He had reunification services with two other children for . . . criminal activity and for drugs. He did not participate in the services. There [i]s no evidence that father has addressed or

8

resolved the issue that brought those children into court. Further, father has not had contact with the children [in this case] for quite some time. I think it would be premature to release the children to him."

DCFS also opposed father's request, arguing that "pursuant to 361.2, the Legislature absolutely envisioned a scenario where a . . . non-offending parent can still pose a detriment to that child and that is this case." Counsel for DCFS explained the agency "could accommodate . . . father and file a petition [against him, but] though[t] he would want reunification services. . . . I would ask the court to find a detriment under 361.2."

In response, the court explained that DCFS "certainly could have filed a petition and requested no [reunification services] specifically as to [father] because he does have a prior child who was removed and not returned. So the Department . . . was pretty generous in recommending that he be given an opportunity for reunification services. I'm going to deny father's request. . . . I don't think it's appropriate." The court was then asked to clarify whether its statements constituted a "find[ing] that there's detriment. . . ." The court stated: "I have to make findings. [¶]. . . [¶] The court has considered the evidence , . . . [and] finds by clear and convincing evidence pursuant to section 361(c) that there is a substantial danger if the children were returned home to the physical health, safety, protection, physical or emotional well-being of the children. There are no reasonable means by which the children's physical health can be protected without removing the children from father's physical custody. The court orders the children are removed from father's custody."

The court also ordered father "to participate in the following reunification services case plan . . . A DCFS court-approved program for drug and alcohol services, a full drug and alcohol program with aftercare, . . . random or on-demand drug and alcohol testing. Father shall also participate in individual counseling to address all case issues, including those contributing to father's lengthy criminal lifestyle and unresolved substance abuse history, as well as father's neglect to parent any of his children, including father's family reunification services being terminated in 2011 for two older children."

9

**DISCUSSION**

Father appeals the court's order denying him custody of Alfonso and Jazmin. Father contends we must reverse the juvenile court's ruling because it erroneously assessed his custody request under section 361, subdivision (c), which is a removal statute applicable to custodial parents, rather than section 361.2, which governs a noncustodial parent's request for custody of a child who has been removed from the custodial parent.

### A. *Summary of Relevant Statutes*

"The dependency statutory framework distinguishes between a parent with whom the child was residing at the time the section 300 petition was initiated (custodial parent), and a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the provisions of section 300 (noncustodial parent). (§§ 361, subd. (c), 361.2, subd. (a).)" (*In re V.F.* (2007) 157 Cal.App.4th 962, 969 (*V.F.*).) Section 361, subdivision (c) describes several circumstances under which a child may be removed from the physical custody of a custodial parent. Subdivision (c)(1) provides, in relevant part: "A dependent child may not be taken from the physical custody of his or her [custodial parent or parents] . . . unless the juvenile court finds clear and convincing evidence of any of the following circumstance . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."

Section 361.2, in contrast, governs the child's placement following his or her removal from a custodial parent. Subdivision (a) of the statute requires the court to initially consider placement with a noncustodial parent: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume

10

custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." Section 361.2, subdivision (c) further requires the court to make "a finding either in writing or on the record of the basis for its determination under subdivisions (a)." Although the statute does not specify the burden of proof necessary to deny a noncustodial parent's custody request, our courts have held that "[t]o comport with due process, the detriment finding [under section 361.2, subdivision (a)] must be made under the clear and convincing evidence standard." (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1400; see also *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 302 (*D'Anthony D.*) ["there [must be] clear and convincing evidence of detriment before placement with a noncustodial parent can be denied"].)

In sum, despite the similar standards set forth in section 361, subdivision (c)(1) and section 361.2, subdivision (a), the statutes serve separate purposes and apply to different categories of parents. Section 361, subdivision (c) governs the removal from a custodial parent and "'does not, by its terms, encompass the situation of the noncustodial parent.'" (*V.F., supra,* 157 Cal.App.4th at p. 969.) Section 361.2, subdivision (a), on the other hand, "is not a removal statute" (*ibid.*), but rather governs "placement [of a removed child] with a noncustodial parent." (*D'Anthony D., supra,* 230 Cal.App.4th at p. 303 ["section 361 applies to a custodial parent, while placement with a noncustodial parent is to be assessed under section 361.2"]; see also *R.S. v. Superior Court* (2008) 154 Cal.App.4th 1262, 1270 [§ 361, subd. (c) "does not . . . encompass the situation of the noncustodial parent.' [Citation.] . . . . Rather, section 361.2 governs the child's . . . placement with the noncustodial parent"].)

## B. *Although the Court Erred in Applying Section 361, Subdivision (c), the Error Was Harmless*

DCFS does not dispute mother was a custodial parent of Jazmin and Alfonso, and that father was a noncustodial parent. Nor does it dispute that because father was a

11

noncustodial parent seeking custody of children who had been ordered removed from their custodial parent, the court should have assessed his custody request under section 361.2, subdivision (a), rather than under section 361, subdivision (c)(1). DCFS contends, however, that the record demonstrates there is no reasonable probability the court would have reached a different result had it applied section 361.2, rendering the court's error harmless.

"Before any judgment can be reversed for ordinary error, it must appear that the error complained of 'has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) Reversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citations.] A reasonable probability for these purposes does not mean an absolute probability; the likelihood that the error affected the outcome need not be greater than the likelihood that it did not. [Citation.]" (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078-1079 (*J.S.*).) Our courts have previously held that this "harmless error" analysis is applicable to the specific type of error at issue in this case: improperly assessing a noncustodial parent's custody request under section 361, subdivision (c)(1), rather than section 361.2, subdivision (a). (See *D'Anthony D., supra,* 230 Cal.App.4th at p. 303; *In re Abram L.* (2013) 219 Cal.App.4th 452, 463-464 [erroneous decision to apply section 361 rather than section 361.2 could not be "reverse[d] . . . unless . . . '"it [was] reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"'"]; *cf. J.S., supra,* 196 Cal.App.4th at pp. 1079-1080 [juvenile court's failure to make findings required under § 361.2, subd. (c) subject to harmless error analysis].)

In *D'Anthony D., supra,* 230 Cal.App.4th 202, the court found that a juvenile court's misapplication of section 361 was harmless under circumstances analogous to those presented here. DCFS filed a section 300 petition alleging mother had physically abused her two children, placing them at substantial risk of harm. The father, a noncustodial parent living in Mexico, requested that the children be released to his

12

custody. During a subsequent DCFS interview, both children stated that father had previously struck his son with a belt. The son provided similar statements at the disposition hearing, testifying that father had recently struck him in the face and hit him with a belt.

The juvenile court denied father's custody request, stating that it had found "'by clear and convincing evidence there exist[s] a substantial danger to the children's health.'" (*D'Anthony D., supra,* 230 Cal.App.4th at p. 297.) The court explained that after hearing the child's testimony, it was "'not comfortable releasing [the children] to [father] period.'" (*Ibid.*) Following the hearing, the juvenile court filed a minute order "reflecting its substantial danger findings pursuant to section 361. The court made no finding with respect to section 361.2." (*Ibid.*) Father appealed the order, arguing "that the juvenile court erred by failing to consider his request for custody under section 361.2." (*Id.* at p. 298.)

The appellate court agreed that because father was a noncustodial parent, the juvenile court should have assessed father's custody request under section 361.2, rather than section 361, subdivision (c)(1). The court further concluded, however, that the error was harmless "[i]n view of the juvenile court's 'substantial danger' finding under section 361, subdivision (c)(1), and the evidence supporting that finding with respect to father." (*D'Anthony D., supra,* 230 Cal.App.4th at p. 303.) In its analysis, the court noted the "similarity between" the "substantial danger" finding necessary to remove a child under section 361, subdivision (c), and the "detrimental" finding necessary to deny custody to a noncustodial parent under section 361.2. (*Ibid.*) The court further explained that the record demonstrated the juvenile court had made an "unequivocal" finding against father "under section 361" (*id.* at p. 304), and that the finding was supported by evidence he had physically abused his son. The court concluded that "in view of this evidence, and the court's express finding under section 361, we cannot say it is 'reasonably probable' that the court would have made a different finding had it considered whether the placement would be detrimental to the children's safety or physical well-being under section 361.2." (*Id.* at p. 304.)

We agree with *D'Anthony D.*'s analysis, which applies equally here. As explained in *D'Anthony D.,* the mandatory finding necessary to remove a child from a custodial parent under section 361, subdivision (c)(1) is very similar to the finding necessary to deny a noncustodial parent custody request under section 361.2, subdivision (a). Under section 361, subdivision (c)(1), the juvenile court must find by clear and convincing evidence that returning the child to the custodial parent would be a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child." Under section 361.2, subdivision (a) the juvenile court must find by clear and convincing evidence that placing the child with the noncustodial parent "would be detrimental to the safety, protection, or physical or emotional well-being of the child." To the extent the two standards differ, section 361, subdivision (c)(1)'s requirement of a "substantial danger" findings appears to impose a stricter standard than the finding of "detriment" required under section 361.2.

In this particular case, as in *D'Anthony D.,* the trial court made an express finding that placing the children with father would be a substantial danger to their "physical health, safety, protection, physical or emotional well-being." The court's decision was based on evidence in the record showing that: (1) father had previously failed to reunify with two other children who he had neglected; (2) father had an extensive criminal history that included firearms offenses, drug offenses, violent crimes, parole violations and several periods of incarceration; and (3) father had previously neglected Alfonso and Jazmin, and had not seen them for approximately one year.

In view of this evidence, and the court's express finding against father under section 361, subdivision (c)(1), it is not "reasonably probable" the court would have made a different factual finding had it considered whether the placement would be detrimental to the children's well-being under section 361.2.

14

**DISPOSITION**

The juvenile court's orders are affirmed.


ZELON, J.


We concur:


PERLUSS, P. J.


BLUMENFELD, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15