[Civ. No. 47613. Second Dist., Div. Four. Dec. 3, 1976.]

In re the Marriage of HELENA and JAN T. FISCHER.
HELENA FISCHER, Appellant, v.
JAN T. FISCHER, Appellant.

**COUNSEL**

Arthur J. Crowley and Douglas A. Bagby for Appellant Wife.

Jack D. Scott for Appellant Husband.

**OPINION**

**DUNN, J.**—This is a proceeding for dissolution of marriage. Pursuant to stipulation of the parties, the matter was bifurcated. Accordingly, after

entry of an interlocutory judgment of dissolution and entry of final judgment of dissolution, the trial court reserved jurisdiction over all issues other than the marital status of the parties.

Trial of the reserved issues took place in November 1974. Findings of fact and conclusions of law were signed and filed. Among the facts found were the following: the parties were married August 11, 1948, and separated November 4, 1973; they have one minor child, a son born January 21, 1958; husband has done, and presently is doing, business as JTF Company; as of the date of separation of the parties, the assets of JTF Company were community property having a value of $21,000; the assets have increased in value since the separation; said increase is due in part to natural increase, in part to the purchase by husband of additional assets, and in part to husband's post-separation earnings and accumulations; $2,240 of the increase in value of JTF Company assets represents community property; the remainder of said increase is husband's separate property; other community property of the parties includes: husband's interest in the retirement fund of Republic Van & Storage; husband's right to receive $64,000 per year for a period of five years under his "consulting agreement" of October 1, 1974, with Republic Van & Storage; the sum of $264 per month, payable for three years to JTF Company under the consulting agreement; additional community property consists of the following items at the values indicated: equity in the family residence, $45,332; furniture and fixtures of the residence, $5,000; crystal and silverware, $1,100; unimproved real property, $4,500; a camera, $240; stereo equipment, $200; a 1969 Mercedes Benz automobile, $3,087; husband misappropriated $2,680 of community funds; wife has no earning capacity other than what she may earn by investing her share of the community estate; husband has an earning capacity of $15,000 gross per year, in addition to returns on the investment of his share of the community estate; wife has a present need of spousal support in the sum of $300 per month, and child support in a like sum; husband has the ability to pay each of such sums; pursuant to an order of the court dated March 26, 1974, husband paid $18,180 of community obligations; through November 12, 1974, wife incurred, in the dissolution proceeding, attorneys' fees and costs of $17,782; "it is fair and equitable" that wife's attorneys receive, from the community funds of the parties held in trust, the sum of $12,000 as partial payment of attorneys' fees and costs. As a conclusion of law, the court determined that husband was entitled to be reimbursed for the $18,180 of community obligations which he paid pursuant to the order of the court.

Judgment on the reserved issues was entered. The judgment ordered that husband pay to wife half the benefits to be received by him from the retirement fund, and half the compensation to be received by him from the consulting agreement (including half the sum payable to JTF Company under the agreement). The judgment awarded the following community property to wife: the family residence; the furniture and fixtures; the crystal and silverware; the automobile; the following community property was awarded to husband: the assets of JTF Company; the unimproved real property; the camera; the stereo equipment. Husband was ordered to pay to wife $300 per month as child support, and $300 per month as spousal support "until either party dies, [wife] remarries, or until further Order of Court." It was also ordered that the following payments (among others) be made from the $290,000 of community property cash held in trust: $12,000 to wife's attorneys; $41,839 to husband. The judgment ordered that the remaining cash held in trust be divided equally between the parties.[1]

Wife appeals from that portion of the judgment which ordered that $41,839 be paid to husband from the community cash. Husband cross-appeals from the following portions of the judgment: (1) the valuation of JTF Company; (2) the award of spousal support to wife; and (3) the failure to award attorney's fees to husband's counsel.

### Wife's Appeal

Wife challenges only the reimbursement to husband, from the community cash, for his expenditure of $18,180 to pay community obligations pursuant to the court's order of March 26, 1974.

Following a hearing on wife's motion for an order to show cause, the trial court, on March 26, 1974, ordered that husband pay to wife, from husband's separate property, $400 per month as child support and $800 per month as spousal support, such payments to be retroactive to January 15, 1974, "pursuant to stipulation." Husband further was ordered to pay certain expenses of wife and the minor child of the parties; the order did not specify the source of such payments. (Wife does not dispute the community character of the expenses paid by husband.)

---

[1]The judgment also divided other community assets (e.g., income tax refunds, shares of stock, paintings) equally between the parties. The court made no findings of the respective values of such assets.

The evidence showed: husband had no community funds with which to comply with the order of March 26, 1974; therefore, he borrowed, "through the JTF Company," the aggregate sum of $18,180 from Wells Fargo Bank in order to pay the community obligations enumerated in the order; this sum was borrowed "in connection with this $25,000 secured line of credit [for JTF Company]. This was a community property line of credit with Wells Fargo"; pursuant to the borrowing arrangement, when a community obligation arose, husband called the bank and requested the sum necessary to pay the obligation; the bank then credited the specified sum to the JTF Company account; in February 1974 husband inadvertently paid from his "personal bank account" community expenses totaling $4,449 which should have been paid with community funds; in February 1974 he also "inadvertently and erroneously" deposited in his personal account a total of $2,295 which should have been deposited in the community account; accordingly, he reimbursed himself in the sum of $2,154 ($4,449 minus $2,295) from the JTF Company account.

■ Money borrowed by either spouse on the credit of community property is community in character. (*Heney* v. *Pesoli* (1895) 109 Cal. 53, 63 [41 P. 819]; 10 Cal.Jur.2d 689, Community Property § 23.) Therefore, the funds husband borrowed on the credit of JTF Company were community funds.[2] Such funds were used to pay the community expenses which the court ordered husband to pay. Under these circumstances, to reimburse husband for payment of the community expenses would force the community to pay the expenses twice, contrary to both law and logic. Likewise, husband is not entitled to reimbursement for community expenses paid out of his separate funds.[3] "The basic rule is that the party who uses his separate property for community purposes is entitled to reimbursement from the community . . . only if there is an agreement between the parties to that effect," and this rule applies even though separate funds are expended for community purposes at a time when community funds are not available. (*See* v. *See* (1966) 64 Cal.2d 778, 785 [51 Cal.Rptr. 888, 415 P.2d 776]. See also *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 570 [63 Cal.Rptr. 13, 432

[2]Husband here borrowed the money before entry of either the interlocutory judgment of dissolution (Oct. 28, 1974) or the final judgment of dissolution (Dec. 30, 1974). Therefore, the marriage (and hence the community) was in existence when the money was borrowed. (See *McLellan* v. *McLellan* (1972) 23 Cal.App.3d 343, 354 [100 Cal.Rptr. 258]; *Green* v. *Green* (1944) 66 Cal.App.2d 50, 57 [151 P.2d 679].)

[3]For the purpose of this discussion, we assume the trial court impliedly found that what husband referred to as his "personal bank account" was his separate property.

P.2d 709]; *In re Marriage of House* (1975) 50 Cal.App.3d 578, 580 [123 Cal.Rptr. 451].) The evidence here discloses no agreement between the parties to reimburse husband for the expenditure of his separate funds to pay community expenses. It follows that the $18,180 expended for community obligations by husband, pursuant to the court order of March 26, 1974, was improperly included in the sum of $41,839 which the judgment ordered be paid to husband from the community cash.[4]

### Husband's Cross-appeal

Husband contends the evidence does not support the value of $23,240 assigned by the trial court to the community portion of the assets of JTF Company.

At the trial, a certified public accountant testified, on behalf of wife, that as of December 31, 1973, JTF Company had a net estimated market value of $11,001.46, excluding a promissory note for $10,000 payable to the company. The trial court found, as a fact, that as of the date of separation of the parties (Nov. 4, 1973) the assets of JTF Company were community property having a value of $21,000 (this figure apparently being the sum of the market value of approximately $11,000 and the promissory note for $10,000). The court further found that the assets of the company had increased in value since the separation, and that $2,240 of such increase constituted community property.

Husband does not challenge the latter finding. He contends the value of community assets must be determined as near the date of trial as possible (*In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 436-437 [119 Cal.Rptr. 590]; *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 110 [113 Cal.Rptr. 58]). Husband then points out that he testified: at the time of trial, only $3,000 remained unpaid on the promissory note; husband would be willing to sell JTF Company to wife for $14,000 (i.e., the $11,000 value fixed by wife's expert witness, plus $3,000 due on the note). Thus, although husband does not expressly so state in his brief, we assume he is contending that the trial court should have assigned a value of $14,000 to the community portion of JTF Company assets. If such is

---

[4]Wife was awarded community property worth $54,519; husband was awarded community property worth $28,180. To compensate for the difference in value, $26,339 was awarded to husband. From this sum, $2,680 was deducted for community funds misappropriated by husband. To the resulting sum of $23,659 was added $18,180 for community expenses paid by husband, for a total of $41,839 which the judgment ordered be paid to husband from the community cash.

husband's contention, we reject it, for it proceeds on a theory of valuation at the time of separation and ignores the community's share of the post-separation increase in the value of the company's assets.

    ■ In *In re Marriage of Imperato, supra,* 45 Cal.App.3d at page 436, the court stated: "The opinion [*In re Marriage of Lopez, supra,* 38 Cal.App.3d 93] reaffirms that the valuation date should be at date of trial or close thereto, but recognizes that both spouses keep their earnings and accumulations as their separate property after separation. If the earnings of a spouse in some manner increase the value of a community asset, the court must then determine what portion of the asset is community property and what portion is separate property. . . . Valuation on date of separation is important only when it is used in conjunction with the final valuation for apportioning community and separate property." In the present case, the trial court assigned a value of $21,000 to the assets of JTF Company at the date of separation. The court then determined that $2,240 of the post-separation increase in the value of the assets was community property, and that the remainder of such increase was husband's separate property. The court thereby arrived at a valuation of $23,240, at the date of trial, for the community portion of the assets of JTF Company. We find no error.

    ■ Husband next contends the trial court abused its discretion in awarding to wife spousal support of $300 per month.

    Civil Code section 4801, subdivision (a), provides in part: "In any judgment decreeing the dissolution of a marriage . . . the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse. . . ." As used in the statute, the word "circumstances" includes " 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' [Citation.] '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' " (*Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249].)

The evidence here showed: the parties were married in 1948; during the marriage, wife was employed outside the home for nine years; she worked as a legal secretary, a nurse's aide and a typist; she was last employed in 1957; since then, she has devoted her time exclusively to the care of her family and home; at the time of trial wife was 51 years old, and husband 52; husband has a law degree from the University of Vienna, and has studied accounting; in the early 1950's he was employed by Bekins Van and Storage Company as chief accountant and assistant to the controller; in 1956 or 1957 he was employed by Republic Van & Storage Company as controller; he remained in that capacity until 1964, when he and another person purchased Republic Van & Storage; by 1971, husband had acquired sole ownership of the company; under his direction, the gross annual receipts of Republic Van & Storage increased from $500,000 in 1964 to almost $3 million in 1973; on October 1, 1974, husband, after the date of separation, sold the common stock of Republic Van & Storage for $322,778; under a "consulting agreement," executed in connection with the sale, Republic Van & Storage agreed to retain husband as a consultant for a period of five years (through Sept. 30, 1979) at a salary of $64,000 per year, payable in equal monthly installments; the agreement provided that during the first two years of his employment as consultant, husband would devote not more than half of his business time and activities to his duties as consultant; thereafter, husband was required to devote to these duties only such time "as may be necessary."

The trial court found: wife has no earning capacity other than what she may earn by investing her share of the community property; husband has an earning capacity of $15,000 gross per year, in addition to return on investment of his share of the community property. Husband contends the finding is not supported by the evidence because the consulting agreement provided that during the first two years thereof (Oct. 1, 1974-Sept. 30, 1976) husband could engage in no employment other than that of consultant for Republic Van & Storage. However, the agreement contains no such restriction. It provides that during the two-year period *"upon request* of the Company, [husband] *may* be required to devote not more than one-half of his business time and activities to the business and operation of the Company." (Italics added.) In view of husband's education and his experience and success in business, the trial court's estimate of husband's earning capacity is amply sustained. Husband further attacks as unsupported the finding that wife

has no earning capacity. Such finding is supported by evidence that wife is 51 years old and had not been gainfully employed for 17 years.

The record shows that wife was awarded the family residence, and therefore will be required to meet the following monthly expenses (among others): mortgage payment, $400; property tax, $200; utilities, $70; maintenance of residence, $90.

The granting or refusal of spousal support, and the amount thereof, if allowed, are matters largely in the discretion of the trial court, and its action will not be disturbed in the absence of an abuse of discretion (*Millington* v. *Millington* (1968) 259 Cal.App.2d 896, 917 [67 Cal.Rptr. 128]; *Dickson* v. *Dickson* (1964) 225 Cal.App.2d 752, 755 [37 Cal.Rptr. 718]; *Schulze* v. *Schulze* (1962) 206 Cal.App.2d 330, 335 [23 Cal.Rptr. 693]; *Forrest* v. *Forrest* (1954) 125 Cal.App.2d 674, 677 [271 P.2d 70].) In light of the circumstances of the respective parties summarized above, it cannot be said that the trial court abused its discretion in awarding to wife spousal support of $300 per month.

■ Husband's final contention is that the judgment should have included an award of fees to his attorney payable out of the community cash.

The record shows: during the trial, husband requested that the court award to husband's counsel, Mr. Scott, attorney's fees from the community cash in an amount equal to the fees awarded to wife's attorneys; the request was denied; following the trial, husband made the same request in a motion for reconsideration, which was denied; wife's attorneys had represented her in the dissolution proceeding from its inception; at the trial they presented evidence of the nature, extent and value of their services; Mr. Scott did not become husband's attorney until August 1974, seven months after the petition for dissolution was filed and three months prior to the trial; he presented no evidence regarding the nature and extent of his services rendered to husband in the dissolution proceeding. Under these circumstances, there was no basis for awarding to Mr. Scott attorney's fees in the same amount as those awarded to wife's attorneys out of the community cash.

Husband argues: "It certainly seems reasonable that in a case having cash assets of the magnitude here involved, that each party should bear their own attorney's fees, or, in the alternative, that the attorney's fees of both should be a charge upon the community. To do otherwise would

hark back to the days of 'fault' in divorce proceedings and allow the court to 'punish' the 'guilty.' " Thus, husband apparently contends that payment of the fees of wife's attorneys from the community cash results in an unequal division of the community property, contrary to the mandate of Civil Code section 4800, subdivision (a). The contention is without merit, for an award of attorneys' fees is independent of the division of the community property. (*In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 262-266 [105 Cal.Rptr. 483].)

The judgment is modified to provide that husband be paid, from the community cash held in trust, the sum of $23,659.[5] As thus modified, the judgment is affirmed. Wife shall recover her costs of appeal.

Kingsley, Acting P. J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied December 20, 1976.

---

[5]This sum is the result of deducting $18,180 (erroneous reimbursement to husband for community expenses paid pursuant to court order) from the $41,839 which the judgment awarded to husband out of the community cash.