[Civ. No. 4075. Fifth Dist. Jan. 16, 1979.]

JOHNNIE SUE FULLER, Plaintiff and Respondent, v.
LORRAINE BLAKE FULLER, Defendant and Appellant.

COUNSEL

Ruth E. Cooper and Cooper & Cooper for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James Ching and Vincent J. Scally, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HOPPER, J.—The primary issue here concerns whether in ruling on a motion to modify child support the trial judge may properly consider, in any way, the combined income and assets of the parent and his or her nonmarital partner. We answer in the affirmative and conclude that in this case there was no abuse of discretion by the trial judge.

Appellant (Mr. Fuller) and respondent (Mrs. Fuller) were divorced in 1969. On February 15, 1978, Mr. Fuller sought modification of his child support payments, seeking a reduction of those payments from $60 per month per child to $15 per month per child. This is an appeal from an order denying that motion to reduce child support.

The facts are: In August 1977 Mr. Fuller was employed by the Naval Weapons Center, Ridgecrest, California. At that time he was grossing approximately $1,280 per month. In August of 1977 Mr. Fuller suffered a stroke, which led to his being placed on medical retirement. His income from his job ceased at the end of September 1977. His medical retirement benefits began approximately 62 days later, or the end of November 1977. His income derived from the medical retirement payment was $519 per month. From the first of October Mr. Fuller received $416 per month from unemployment insurance. Thus, from the end of November 1977 Mr. Fuller was grossing approximately $935 per month. The unemployment insurance payments continued from October 1977 through February 1978. On his financial declaration in support of his motion for reduction of child support payments Mr. Fuller failed to indicate that he was receiving unemployment insurance benefits. In his declaration, as well as in his testimony at the hearing, Mr. Fuller stated that he did not own any property. However, under cross-examination at the hearing, Mr.

Fuller admitted that he did own a 1940 Ford coupe, which he indicated was worth between $1,800 and $3,000.

At the time of the hearing Mr. Fuller was living with a Kay F. (Kay). Mr. Fuller and Kay had been living together for about six years. With them lived Kay's child by a previous marriage. Kay was receiving child support for the child. The couple had an arrangement for sharing living expenses, including the payment for food, rent, and utility bills. Mr. Fuller paid part of the monthly rent, paid the telephone bill, and alternated every two weeks with Kay in purchasing food for the household.

Over Mr. Fuller's objections, counsel for Mrs. Fuller was allowed to question Mr. Fuller about Kay's earnings, which Mr. Fuller estimated to be about $620 per month net. Also over Mr. Fuller's objections, Mrs. Fuller and the court questioned him at length about property owned by Kay which consists of several antique automobiles of a substantial value. Mr. Fuller testified that the vehicles belong to Kay, that title is in her name only and that he contributed nothing towards them. Although Mr. Fuller denied ownership of any of those cars, he admitted that he and Kay referred to the cars as "our cars." He also admitted that he spent a minimum of one hour a day doing mechanical work on these automobiles. He also admitted that he had purchased one of these automobiles, a 1929 model A Ford. In June or July of 1977, Mr. Fuller and Kay had taken a vacation back east together in this car. Mr. Fuller also admitted that he has use of one of Kay's cars, a Dodge van. The total value of the eight automobiles owned by Mr. Fuller and/or Kay is in excess of $15,000.

Mrs. Fuller had a net monthly income of $473, exclusive of child support payments, and had monthly expenses of $743, including expenses for the children. The combined monthly income of Mr. Fuller and Kay is apparently about $959 per month.

At the conclusion of the testimony, the trial court denied Mr. Fuller's motion to modify the child support and ordered the support to remain at $60 per month for each of the three children.

Mr. Fuller contends that the trial court erred in basing its ruling on inadmissible evidence, i.e., the income and assets of Kay; in refusing to allow presentation of evidence of Kay's expenses and obligations; and that the trial court abused its discretion in refusing to reduce the amount

of child support. We conclude that the contentions of Mr. Fuller fail to pass muster.

Civil Code section 4700, subdivision (a), provides in part: "In any proceeding where there is at issue the support of a minor child, the court may order either or both parents to pay any amount necessary for the support, maintenance, and education of the child. . . . Any order for child support may be modified or revoked as the court may deem necessary, . . ."

■ The very nature of child support and the fact that it is administered by a court exercising equity powers require that a trial court consider all just and equitable factors in the determination of the amount to be paid. ■ Although the instant case is not instituted under the Uniform Civil Liability for Support Act (Civ. Code, § 241 et seq.), we believe that the uniform act by analogy is indicative of legislative intent on the subject of child support and is enlightening as to the proper factors to be considered by the trial court in any and all child support cases. (See *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942 [126 Cal.Rptr. 805, 544 P.2d 941].)

Civil Code section 246 (part of the uniform act) provides in pertinent part:

"When determining the amount due for support the court shall consider the following circumstances of the respective parties:

"(a) The earning capacity and needs of each party.

"(b) The obligations and assets, including the separate property, of each.

"(c) The duration of the marriage.

"(d) The ability of the obligee to engage in gainful employment without interfering with the interests of dependent children in the custody of the obligee.

"(e) The time required for the obligee to acquire appropriate education, training, and employment.

"(f) The age and health of the parties.

"(g) The standard of living of the parties.

"(h) Any other factors which it deems just and equitable." (For a similar list covering spousal support see Civ. Code, § 4801.)

■ The extent of the parental support obligation is left to the sound discretion of the court and the trial court's order will not be disturbed on appeal unless that discretion is abused. (*Armstrong* v. *Armstrong, supra,* 15 Cal.3d 942, 947.) ■ We conclude that the trial court did not abuse its discretion. It is just and equitable to consider all factors relating to a person's living situation. Mr. Fuller's assertion that Kay owes no duty to support the children of the parties to this suit is correct. (Civ. Code, § 209.) However, such a ruling does not mean that it is improper to consider the income of Kay insofar as that income is being used to reduce Mr. Fuller's expenses, which in turn affects Mr. Fuller's ability to pay child support. Insofar as income is concerned of the nonmarital partner, it is immaterial what relationship, if any, exists between Mr. Fuller and Kay. The same right of consideration by the court of all of the factors involved in the living situation and circumstances apply to the situation of a father or mother living alone and receiving benefits in the form of gifts, receipts from parents or third parties or income from a trust, governmental aid, or from whatever source. A like conclusion should be reached where the parent is supported by an organized group (see *Pencovic* v. *Pencovic* (1955) 45 Cal.2d 97 [287 P.2d 501]) or is sharing expenses with others (of the same or different sex). The sex of those sharing expenses is irrelevant to the basic economics involved. The existence and not the source of sums of money or services available is the relevant factor. Mr. Fuller's contention that Kay is not contributing is contrary to the determination by the trial court. That determination is supported by substantial evidence. Mr. Fuller, while on the one hand denying that Kay was contributing, on the other hand testified that he and Kay were sharing the food bill, each paying the bill every other two weeks. The trial court could properly infer from the evidence before it that Mr. Fuller and Kay were sharing in some manner income and expenses. There is also substantial evidence in the record to support the conclusion that Mr. Fuller had some interest in the various automobiles.

Credibility is a factor for the trial court and not for us, and the trial court was entitled in this case to reject all or part of Mr. Fuller's testimony. Several instances going to the credibility of Mr. Fuller are present in this case and could properly be considered by the trial court, such as: (1) the declaration by Mr. Fuller failed to list unemployment

insurance income; (2) the rent being paid as shown in the declaration by Mr. Fuller differs from the amount testified to by him in court; (3) the declaration of Mr. Fuller did not list any automobiles as being the property of Mr. Fuller whereas he admitted in examination by the court to the fact that he owned at least one automobile. The court could properly conclude that Mr. Fuller and Kay exchanged services and had some pooling of interests which resulted in a lessening of expenses on the part of Mr. Fuller.

The trial court relied on *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106] in concluding that it had the authority to assess the nature of Mr. Fuller's nonmarital relationship. *Marvin* did not address the question of child support. We find it unnecessary to discuss *Marvin* as such in the light of our conclusion that the trial court had the authority in any event, as heretofore discussed, to assess the nature of Mr. Fuller's nonmarital relationship insofar as it affected Mr. Fuller's ability to provide child support. In the final analysis, the trial court did not have to consider the existence or nonexistence of an implied or expressed agreement to share income or assets as such except to the extent that the living conditions did in fact go towards reducing expenses for Mr. Fuller and thereby freeing other funds available to him so as to increase his financial ability to make the $60 per child per month payments.

As the Court of Appeal stated in *In re Marriage of Fischer* (1976) 78 Cal.App.3d 556, 563 [146 Cal.Rptr. 384] (a spousal support case) a trial court may consider " ' "practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties." . . . "It [includes] the needs of the parties *and the ability of the parties to meet such needs;*" . . .' " (*In re Marriage of Fischer, supra,* 78 Cal.App.3d 556, 563.) (Italics added.)

The facts of each case must be explored to determine if there has been an abuse of discretion. (*In re Marriage of Milch* (1975) 47 Cal.App.3d 666 [120 Cal.Rptr. 901].)

■ Mr. Fuller's contention that the trial court erroneously refused to allow him to present evidence of Kay's expenses and obligations fails to pass muster. It is irrelevant what expenses Kay may have. What is relevant is what expenses Mr. Fuller has which are being effectively reduced by the particular living circumstances of this case.

Furthermore, regardless of Kay's income or assets, we cannot hold that there would be an abuse of discretion in finding that the payments ordered were within the capacity of Mr. Fuller. We note in passing that the trial court expressed the view that the support payments ordered in this case were "super low."

Mr. Fuller, who has the burden of proof (*Armstrong* v. *Armstrong, supra,* 15 Cal.3d 942, 947), has not shown any abuse of discretion in the instant case.

The judgment is affirmed.

Franson, Acting P. J., and Creede, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.