[No. S014436. July 18, 1991.]

MONTEREY COUNTY, Plaintiff and Appellant, v.
ROBIN JOSEPH CORNEJO, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Josanna Berkow, Deputy Attorneys General, for Plaintiff and Appellant.

Ira Reiner, District Attorney (Los Angeles), Harry B. Sondheim and Brent Riggs, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Appellant.

Segretti, Pitman & Erdbacher, Robert J. Pitman and John Viljoen for Defendant and Respondent.

## OPINION

**ARABIAN, J.**—We granted review to determine whether, in a proceeding brought by the district attorney for modification of a child support order and determination of arrearages, the trial court may allocate to the noncustodial parent the dependency deduction for state and federal tax purposes. We hold that the allocation was proper.

### I. FACTS

The essential facts are undisputed. Respondent Robin Joseph Cornejo is the natural father of Jason A., born to Dina G. on September 17, 1980. The couple never married.

Respondent separated from Dina and the unborn child in January 1980. That same month, Dina began to receive welfare benefits (Aid to Families with Dependent Children (AFDC)) from Monterey County (County); she continued to receive public assistance until 1983.

In April 1980, the district attorney of the County filed a complaint on behalf of Dina and Jason for child support and reimbursement of public assistance. Respondent acknowledged paternity and agreed to pay child support of $100 per month. He also stipulated to Dina's continued physical and legal custody of Jason. The district attorney filed two subsequent actions in 1983 for upward modifications of the support order and a determination of arrearages.

The instant proceeding commenced in December 1988, when the district attorney again sought an increase in child support, to $385 per month, and a determination of arrearages, pursuant to Welfare and Institutions Code sections 11350.1 and 11475.1.[1] In a responsive declaration respondent agreed to monthly child support payments of $250 and $25 per month toward arrearages. At the same time, respondent requested that he be allowed to claim the child as a dependent for federal and state income tax purposes. Respondent alleged that Dina had claimed the dependency deduction each year since Jason's birth. The district attorney opposed the request on three grounds: (1) that the trial court's "jurisdiction" in child support enforcement actions under section 11350.1 was limited to the issues of support and paternity and did not extend to tax matters; (2) that it was "inappropriate" to litigate the custodial parent's tax benefits in an action to which she was not a party; and (3) that a reallocation of the deduction would require a further adjustment of child support.

The parties ultimately agreed upon a modification of child support to $272 per month, and arrearages of $2,546.32, leaving the allocation of the dependency deduction as the sole unresolved issue. Following a hearing, the trial court ordered that respondent "shall be allowed to claim the minor child . . . as a dependent for state and federal income tax purposes until further order of the court."

The Court of Appeal affirmed, holding that the trial court possessed the statutory authority to allocate the tax deduction, and that Dina's interests were adequately protected in the enforcement proceeding.

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

The Attorney General filed a petition for review on behalf of the County.[2] In addition to the statutory and due process claims raised below, the County alleged that federal tax law divested the trial court of jurisdiction to allocate the dependency deduction to the noncustodial parent. While generally we will not consider arguments which could have been but were not timely made in the Court of Appeal (Cal. Rules of Court, rule 29(b)(1)), we granted review because the federal preemption claim presents an important jurisdictional issue of first impression in this state.

## II. Discussion

### A. *Federal Tax Dependency Exemption*

Our analysis centers on section 152(e) of the Internal Revenue Code (section 152(e)). Prior to January 1, 1985, the pertinent provisions of that section provided that unless otherwise specifically agreed to in a writing by the parties or addressed in a court decree, a noncustodial parent was entitled to claim a dependency exemption where that parent paid more than $1,200 toward the support of a child in any calendar year and the custodial parent "did not clearly establish that he [or she] provided more for the support of such child during the calendar year than the parent not having custody." (Int.Rev. Code of 1954, § 152(e)(2)(B), as amended in 1976.) State decisions had uniformly interpreted the pre-1985 version of section 152(e) to allow state court allocation of the exemption to the noncustodial parent. (See, e.g., *Grider* v. *Grider* (Ala.Civ.App. 1979) 376 So.2d 1103; *Greeler* v. *Greeler* (Minn.Ct.App. 1985) 368 N.W.2d 2; *Morphew* v. *Morphew* (Ind.Ct.App. 1981) 419 N.E.2d 770; *Pettitt* v. *Pettitt* (La.Ct.App. 1972) 261 So.2d 687; *Westerhof* v. *Westerhof* (1984) 137 Mich.App. 97 [357 N.W.2d 820]; *Niederkorn* v. *Niederkorn* (Mo.Ct.App. 1981) 616 S.W.2d 529; *MacDonald* v. *MacDonald* (1982) 122 N.H. 339 [443 A.2d 1017].)

Section 152(e) was problematic for the Internal Revenue Service (IRS), however, because it often involved the IRS as an unwilling mediator in factual disputes between divorced or separated parents over which parent provided more support for the child and was thus entitled to the dependency exemption. Accordingly, the law was amended by the Tax Reform Act of 1984 (Pub.L. No. 98-369, 98 Stat. 494) to provide that the custodial parent is always entitled to the exemption unless he or she signs a written declaration disclaiming the child as an exemption and the noncustodial parent

---

[2] The California District Attorneys Association has filed an amicus curiae brief in support of the County.

attaches the declaration to his or her return. (Int.Rev. Code of 1954, § 152(e)(2).).)[3]

The reasons for the amendment to section 152(e) are set forth in the legislative history of the Tax Reform Act of 1984, as follows: "The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The costs to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless the spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service." (Legislative History of the Deficit Reduction Act of 1984 (Pub.L. No. 98-369) H.R.Rep. No. 432, pt. II, 98th Cong., 2d Sess., reprinted in 1984 U.S. Code Cong. & Admin. News, pp. 697, 1140.)

Since the amendment to section 152(e), the vast majority of jurisdictions considering the issue have concluded that state courts retain jurisdiction to allocate dependency exemptions to noncustodial parents. (*Gamble* v. *Gamble* (Ala.Civ.App. 1990) 562 So.2d 1343; (*Lincoln* v. *Lincoln* (1987) 155 Ariz. 272 [746 P.2d 13]; *Serrano* v. *Serrano* (1989) 213 Conn. 1 [566 A.2d 413]; *In re Marriage of Einhorn* (1988) 178 Ill.App.3d 212 [533 N.E.2d 29]; *Ritchey* v. *Ritchey* (Ind.Ct.App. 1990) 556 N.E.2d 1376; *In re Marriage of Kerber* (Iowa Ct.App. 1988) 433 N.W.2d 53; *Hart* v. *Hart* (Ky.Ct.App. 1989) 774 S.W.2d 455; *Rovira* v. *Rovira* (La.Ct.App. 1989) 550 So.2d 1237; *Wassif* v. *Wassif* (1989) 77 Md.App. 750 [551 A.2d 935]; *Bailey* v. *Bailey* (1989) 27 Mass.App. 502 [540 N.E.2d 187]; *Fudenberg* v. *Molstad* (Minn.Ct.App. 1986) 390 N.W.2d 19; *Nichols* v. *Tedder* (Miss. 1989) 547 So.2d 766 [77 A.L.R.4th 757]; *Corey* v. *Corey* (Mo.Ct.App. 1986) 712 S.W.2d 708; *In re Marriage of Milesnick* (1988) 235 Mont. 88 [765 P.2d 751]; *Babka* v. *Babka* (1990) 234 Neb. 674 [452 N.W.2d 286]; *Gwodz* v. *Gwodz* (1989) 234 N.J. Super. 56 [560 A.2d 85]; *Zogby* v. *Zogby* (1990) 158 A.D.2d 974 [551 N.Y.S.2d 126]; *Cohen* v. *Cohen* (1990) 100 N.C.App. 334 [396 S.E.2d 344]; *Fleck* v. *Fleck* (N.D. 1988) 427 N.W.2d 355; *Hughes* v. *Hughes* (1988) 35 Ohio St.3d 165 [518 N.E.2d 1213], cert. den. 488 U.S. 846 [102 L.Ed. 97, 109 S.Ct. 124]; *Motes* v. *Motes* (Utah Ct.App. 1989) 786 P.2d 232; *In re Marriage of Peacock* (1989) 54 Wn.App. 12 [771 P.2d 767]; *Cross*

---

[3] See IRS form 8332, "Release of Claims to Exemption For Child of Divorced or Separated Parents." The amendment to section 152 of the Internal Revenue Code provided two additional exceptions to the rule of automatic allocation to the custodial parent, neither of which is applicable in this case. (Int.Rev. Code of 1954, § 152(2)(3), (4).)

v. *Cross* (W.Va. 1987) 363 S.E.2d 449; *Pergolski* v. *Pergolski* (1988) 143 Wis.2d 166 [420 N.W.2d 414].)[4]

As the court in *Motes* v. *Motes, supra,* 786 P.2d 232, succinctly stated, "the amendment was merely intended to enhance the administrative convenience of the IRS, not to interfere with state court prerogatives." (*Id.* at p. 237; see also *Fudenberg* v. *Molstad, supra,* 390 N.W.2d at p. 21 ["State court allocation of the exemption does not interfere with Congressional intent. It does not involve the IRS in fact-finding determinations. State court involvement has no impact on the IRS. Thus, allocation of the exemption is permissible."].)

The same courts also generally agree that, while a court order by itself is insufficient under section 152(e) to accomplish an allocation to the noncustodial parent, state trial courts retain the authority to allocate the dependency exemption by ordering the custodial parent to execute the necessary waiver. (See, e.g., *Cross* v. *Cross, supra,* 363 S.E.2d at p. 457; *Wassif* v. *Wassif, supra,* 551 A.2d at p. 940; *Motes* v. *Motes, supra,* 786 P.2d at pp. 236-239; *Nichols* v. *Tedder, supra,* 547 So.2d at pp. 772-780; *Fudenberg* v. *Molstad, supra,* 390 N.W.2d at p. 21; *Pergolski* v. *Pergolski, supra,* 420 N.W.2d at p. 417; *In re Marriage of Milesnick, supra,* 765 P.2d at p. 754; *Lincoln* v. *Lincoln, supra,* 746 P.2d at pp. 16-17; *In re Marriage of Einhorn, supra,* 533 N.E.2d at pp. 36-37;[5] see also *McKenzie* v. *Jahnke* (N.D. 1988)

---

[4]One court has concluded that section 152(e) applies only to parents who are or have been married and thus precludes allocation of the exemption to a noncustodial parent who has never married the custodial parent. (*Gleason* v. *Michlitsch* (1986) 82 Ore.App. 688 [728 P.2d 965, 967].) No other state court has followed this holding, which appears to be contrary to the plain language of the statute. (See *Fudenberg* v. *Molstad, supra,* 390 N.W.2d 19.) Section 152(e)(1)(A) of the Internal Revenue Code refers to three categories of parents: "divorced or legally separated"; "separated under a written separation agreement"; and those who "live apart at all times during the last 6 months of the calendar year . . . ." Respondent and Dina clearly fall within the third grouping.

[5]At one point the Illinois Appellate Courts had appeared to be split on this issue. *In re Marriage of Einhorn, supra,* 533 N.E.2d 29, held that the amendment to section 152(e) "contains no requirement that the declaration must be signed voluntarily and does not prohibit state courts to order the custodial parent to sign the declaration" (533 N.E.2d at p. 37; accord *In re Marriage of Van Ooteghem* (1989) 187 Ill.App.3d 696 [543 N.E.2d 899]). *In re Marriage of Emery* (1989) 179 Ill.App.3d 744 [534 N.E.2d 1014, 1018], on the other hand, had concluded that the trial court "was without authority to award the exemption . . . ." The apparent conflict was resolved when the appellate court that had decided *Emery* subsequently distinguished its prior decision, observing that the question of whether a trial court may order the custodial parent to sign a waiver was not actually before it in *Emery,* and held, in conformity with *Einhorn* and *Van Ooteghem,* that "a trial court may, in its discretion, allocate the tax dependency exemption to the noncustodial parent by ordering the custodial parent to sign a declaration that he or she will not claim the dependency exemption." (*In re Marriage of McGarrity* (1989) 191 Ill.App.3d 501 [548 N.E.2d 136, 138].) Subsequent Illinois decisions have uniformly followed *Einhorn.* (*In re Marriage of Rogliano* (1990) 198 Ill.App.3d

432 N.W.2d 556, 557; *In re Marriage of Lovetinsky* (Iowa Ct.App. 1987) 418 N.W.2d 88, 90; and compare *Jensen* v. *Jensen* (1988) 104 Nev. 95 [753 P.2d 342, 345] [trial court may exercise its equitable powers to compel the custodial parent to execute a waiver, but only if a similar economic result cannot be achieved, as a matter of law, by adjusting alimony and child support to achieve after-tax financial parity].)

As the court in *Cross* v. *Cross, supra,* 363 S.E.2d 449, cogently explained: "What the new Code section sought to achieve was certainty in the allocation of the dependency exemption *for federal tax administration purposes.* By placing the dependency exemption in the custodial parent unless a waiver is executed, the new statute relieves the Internal Revenue Service of litigation. The new statute is entirely silent concerning whether a domestic court can *require* a custodial parent to execute a waiver, and this silence demonstrates Congress's surpassing indifference to how the exemption is allocated as long as the IRS doesn't have to do the allocating." (*Id.* at p. 457, original italics.) Indeed, in the absence of any conflict with the congressional purpose, and in light of the long-standing state court practice of allocating dependency exemptions pursuant to their equitable powers in domestic relations cases, it is eminently reasonable to infer that if Congress had intended to forbid state courts from allocating the exemptions by ordering the waiver to be signed, it would plainly have "said so." (*Id.* at p. 458; accord *Motes* v. *Motes, supra,* 786 P.2d at p. 236; *Wassif* v. *Wassif, supra,* 551 A.2d at p. 940; see also *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, 581 [59 L.Ed.2d 1, 11, 99 S.Ct. 802] [In family law matters "this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be preempted."].)

A small minority of courts have concluded otherwise, holding either that the 1984 amendment to section 152(e) divests state courts of their traditional authority to allocate the dependency exemption (*Lorenz* v. *Lorenz* (1988) 166 Mich.App. 58 [419 N.W.2d 770]), or that even if state courts may consider the exemption in awarding child or spousal support, they may not order custodial parents involuntarily to execute the required waiver. (*Sarver* v. *Dathe* (S.D. 1989) 439 N.W.2d 548; *McKenzie* v. *Kinsey* (Fla.Dist.Ct.App. 1988) 532 So.2d 98; *Brandriet* v. *Larsen* (S.D. 1989) 442 N.W.2d 455.)[6] We find these decisions to be singularly unpersuasive.

---

404 [555 N.E.2d 1114, 1121]; *In re Marriage of Fowler* (1989) 197 Ill.App.3d 744 [554 N.E.2d 240, 243].)

[6] There are other cases that are sometimes cited in opposition to the majority view, but these are generally distinguishable. Two such decisions are *Theroux* v. *Boehmler* (Minn.Ct.App. 1987) 410 N.W.2d 354 and *Davis* v. *Fair* (Tex.Ct.App. 1986) 707 S.W.2d 711. In each case the court held that the trial court lacked the authority under section 152(e) to al-

Michigan is the only jurisdiction which has clearly adopted the view that the amendments to section 152(e) "divested state courts of jurisdiction over which party could take the exemptions." (*Lorenz* v. *Lorenz, supra,* 419 N.W.2d at p. 771) *Lorenz* engaged in little or no analysis beyond simply noting that section 152(e) does not expressly authorize state authority in this area. As discussed earlier, however, neither does the statute prohibit—expressly or impliedly—a state court's requiring the execution of a waiver. So long as the declaration is signed by the custodial parent and attached to the return of the noncustodial parent, the federal goal of administrative clarity and convenience is served; the statute manifests utter indifference to whether the declaration was signed voluntarily or pursuant to court order.

The decisions holding that section 152(e) precludes an involuntary waiver of the dependency exemption are equally without merit. The Florida District Court of Appeal rejected the majority view on the ground that "deductions and exemptions . . . are not to be extended beyond the clear import of the language used" (*McKenzie* v. *Kinsey, supra,* 532 So.2d at p. 100, fn. 3), while the South Dakota Supreme Court in *Brandriet* v. *Larsen* concluded that the amendment to section 152(e) "appear[s] to contemplate a 'voluntary' waiver." (442 N.W.2d at p. 459.) As pointed out earlier, however, section 152(e) plainly grants the noncustodial parent the right to an exemption if he or she obtains a declaration from the custodial parent; the statute is absolutely *silent* as to whether or not a state court may direct the custodial parent to execute the declaration. Thus, as the court in *Motes* v. *Motes, supra,* 786 P.2d 232, aptly noted, "the *McKenzie* court offends the very theory it purports to uphold by imposing prohibitions on state courts which are not expressly or impliedly imposed by section 152." (*Id.* at p. 239.)

Furthermore, as we discuss more fully below, all of the foregoing decisions have recognized—as indeed they must—that the dependency exemption provides a financial benefit to the parent entitled to claim it and thus must be considered in setting child and alimony support; indeed, in three of the decisions where the exemption was held to have been improperly awarded to the noncustodial parent (*Lorenz* v. *Lorenz, supra,* 419 N.W.2d at p. 772; *Davis* v. *Fair, supra,* 707 S.W.2d at p. 718; *Sarver* v. *Dathe, supra,* 439 N.W.2d at p. 552), the matter was remanded to the trial court to *reduce* the previously awarded child support and alimony in light of the noncustodial parent's loss of this financial benefit. Thus, as several courts have observed,

locate the dependency exemption to the noncustodial parent. The distinguishing feature of each case, however, is that in neither was the issue of a court-ordered waiver presented; the court had allocated the exemption to the noncustodial parent, but had failed to order the custodial parent to execute the statutorily mandated waiver. (*Theroux, supra,* 410 N.W.2d at p. 358; *Davis, supra,* 707 S.W.2d at pp. 712, 715.) Thus, carefully analyzed, neither case directly conflicts with the majority position.

invalidating the allocation constitutes little more than a perverse exercise in futility: "[T]he minority view forces state courts to achieve financial parity indirectly, by downwardly adjusting otherwise appropriate alimony and child support, rather than achieving parity directly, by sensibly allocating the exemptions." (*Motes* v. *Motes, supra,* 786 P.2d at p. 239; accord *Cross* v. *Cross, supra,* 363 S.E.2d at pp. 458-459; *Nichols* v. *Tedder, supra,* 547 So.2d at p. 779; *Gamble* v. *Gamble, supra,* 562 So.2d at p. 1346.)

Finally, as many states have recognized, practical considerations militate strongly in favor of states retaining discretion to allocate the exemption by ordering the execution of a waiver. "The facts of life are that income tax exemptions are valuable only to persons with income, and up to a certain point, the higher the income the more valuable exemptions become because of the progressivity of the federal income tax." (*Cross* v. *Cross, supra,* 363 S.E.2d at p. 459; accord *Nichols* v. *Tedder, supra,* 547 So.2d at pp. 776-777; *Motes* v. *Motes, supra,* 786 P.2d at p. 239.) The respective incomes of the parents may be such that if the noncustodial parent is allowed the exemption, his or her income tax may be reduced by an amount *greater* than the increase in the tax liability of the custodial parent deprived of the exemption. This circumstance will obtain where, as is often the case, the custodial parent's adjusted gross income is less than the adjusted gross income of the noncustodial parent. (See *Nichols* v. *Tedder, supra,* 547 So.2d at pp. 773-775.)

In such a case, the effect of awarding the exemption to the noncustodial parent is to increase the after-tax spendable income of the family as a whole, which may then be channeled into child support or other payments. (*Nichols* v. *Tedder, supra,* 547 So.2d at pp. 774-775.) To deny state courts the power to allocate the exemption in these circumstances would only "maximize the federal taxes to be paid to the detriment of the parents and the children." (*Ibid.*; accord *Motes* v. *Motes, supra,* 786 P.2d at p. 239; *Cross* v. *Cross, supra,* 363 S.E.2d at p. 459; *Young* v. *Young* (1990) 182 Mich.App. 643 [453 N.W.2d 282, 289] (conc. opn. of Sawyer, J.).) Consequently, it is eminently reasonable for a trial court to allocate the dependency exemption to the noncustodial parent in the higher income bracket, and increase the child support payments to offset the cash value of the exemption.

In sum, we find nothing in the 1984 amendment to section 152(e) that precludes our state trial courts from exercising their traditional equitable power to allocate the dependency exemption to the noncustodial parent by ordering the custodial parent to execute a declaration waiving the exemption. In the instant case, however, we note that the trial court assigned the tax exemption for the minor child to respondent but did not order the custodial parent, Dina, to sign the necessary declaration which must be

attached to respondent's tax return. Nevertheless, it appears from the record that the trial court fully intended to allocate the exemption in accordance with section 152(e).[7] Accordingly, the matter will be remanded to the trial court to make clear that Dina is to execute the requisite declaration in consideration of the increased child support she will be receiving.[8]

## B. *Due Process*

■ Apart from the question of federal preemption, the Attorney General contends that allocation of the exemption to the noncustodial parent in a proceeding in which the custodial parent is not a party violates the latter's due process rights. We do not agree.

As noted earlier, the County, represented by its district attorney, brought this action on behalf of the mother pursuant to sections 11475.1 and 11350.1. Both statutes were enacted by the California Legislature as a precondition to the state's participation in the federal AFDC program. (See §§ 10600 et seq. & 11200 et seq.) A 1975 amendment to title IV of the federal Social Security Act mandates that states which participate in the AFDC program shall provide child support collection services to all individuals, whether or not they are receiving public assistance. (42 U.S.C. § 654(6)(A); 45 C.F.R. § 302.33(a).)

Section 11475.1 implements this mandate. At the time of these proceedings, the statute specifically provided in part that the district attorney "shall have the responsibility for promptly and effectively enforcing child and spousal support obligations" and that the district attorney "shall take appropriate action, both civil and criminal, to enforce this obligation when the child is receiving public assistance, including Medi-Cal, and when requested to do so by the individual on whose behalf enforcement efforts will be made when the child is not receiving public assistance . . . ."[9] (§ 11475.1, subd. (a); *Worth* v. *Superior Court* (1989) 207 Cal.App.3d 1150, 1154 [255 Cal.Rptr. 304].)

Section 11350.1 specifies the procedures to be followed and limits the issues to be litigated in actions brought under section 11475.1. Section

[7] At the hearing on respondent's motion for the allocation of the exemption, the trial court was made aware of the need for Dina to sign a waiver, and the trial court observed: "I mean she's got to waive, she's got to waive to allow him to take it as a dependency. If she doesn't no one gets any benefit out of this."

[8] As discussed more fully in the following section, Dina was not a party to the proceeding; it was brought on her behalf by the district attorney pursuant to sections 11475.1 and 11350.1. Therefore, while the trial court technically could not "order" Dina to execute the necessary waiver, it could condition the award of child support upon her doing so.

[9] The pertinent provisions of section 11475.1 have since been amended. The amendment effected no change in substance. (See Stats. 1989, ch. 1359, § 12.5.)

11350.1 reads in part as follows: "Notwithstanding any other statute, in any action brought by the district attorney for child support of a minor child or children, the action may be prosecuted in the name of the county on behalf of the child, children, or caretaker parent. The caretaker parent shall not be a necessary party in the action but may be supoenaed as a witness. In an action under this section there shall be no joinder of actions, or coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support . . . . [¶] . . . Nothing contained in this section shall be construed to prevent the parties from bringing an independent action under the Family Law Act (Part 5 (commencing with Section 4000) of Division 4 of the Civil Code) or otherwise, and litigating the issue of support. In that event, the court in those proceedings shall make an independent determination on the issue of support which shall supersede the support order made pursuant to this section."

Although contested below, the relevance of the dependency exemption to the issue of child support and the authority of the trial court under section 11350.1 to allocate the exemption, are now conceded by the Attorney General. To be sure, section 11350.1 limits the triable issues to paternity and child support. Both statutory and case law make clear, however, that the dependency exemption is highly pertinent to the issue of child support, and is therefore a proper subject of consideration in enforcement proceedings undertaken by the County. Section 11476.1, subdivision (g) directs that in determining the noncustodial parent's reasonable ability to pay, "any relevant circumstances set out in Section 246 of the Civil Code shall be considered." Civil Code section 246 requires the court to consider, inter alia, the earning capacity and needs of each party (subd. (a)), the obligations and assets of each (subd. (b)), and any other factors which the court deems just and equitable (subd. (h)). (See *Van Diest* v. *Van Diest* (1968) 266 Cal.App.2d 541, 545 [72 Cal.Rptr. 304] ["Circumstances to be considered by the trial judge in awarding . . . child support are the needs of the parties and the ability to meet those needs, including property owned, obligations to be met, ability to earn and actual earnings."].)

Clearly the parents' income tax liability is an "obligation to be met" under this rubric (*In re Marriage of Neal* (1979) 92 Cal.App.3d 834, 847 [155 Cal.Rptr. 157]) and the allocation of the dependency exemption a "just and equitable" factor to be considered in the determination of the amount to be paid. (*Fuller* v. *Fuller* (1979) 89 Cal.App.3d 405, 409 [152 Cal.Rptr. 467].) As alluded to earlier, nearly every state to consider the matter has concluded that, in the words of the Iowa Court of Appeals: "[D]ependency deductions are connected directly with the requirements of a noncustodial

parent to provide support and the allocation of the allowance has a direct effect on the financial resources available to the child." (*In re Marriage of Lovetinsky, supra,* 418 N.W.2d at p. 90; See also *Baird* v. *Baird* (Mo.Ct.App. 1988) 760 S.W.2d 571, 573 [allocation of the dependency exemption "may directly affect the entire financial position of each party."]; *In re Marriage of Fowler, supra,* 554 N.E.2d at p. 243 ["The allocation of the tax exemption is an element of support, over which a trial court has considerable discretion."]; *Sarver* v. *Dathe, supra,* 439 N.W.2d at p. 551 ["[A]llocation of this tax exemption affects the financial situation of the parties and constitutes a factor in considering ability to pay child support. These are absolutely interlocking considerations."].)

Notwithstanding the undisputed relevance of the dependency exemption to the issue of child support, the Attorney General contends that consideration of the tax matter in a proceeding to which the custodial parent was not a party, such as a child support enforcement action brought by the district attorney, violates the custodial parent's due process rights. We do not agree. As noted earlier, the County, represented by the district attorney, filed this action "on behalf of" the minor child and Dina, the custodial parent. (§§ 11350.1, 11475.1, subd. (a).) Although it is true that she was not a party, Dina fully cooperated with the district attorney's efforts on her behalf, submitted financial disclosure statements and was available to testify as a witness. Both parents have an equal responsibility under the law to support and educate their child. (Civ. Code, § 196a.) Thus, like that of respondent, Dina's employment, income, obligations, number of dependents, withholding and other tax information were highly pertinent to the County's motion for modification of support.

Dina not only had an opportunity and an obligation to present evidence on the question of the dependency exemption, but affirmatively did so; the district attorney submitted written points and authorities in opposition to the award and argued the matter to the court. Accordingly, we perceive no denial of her due process rights.[10]

Significantly, we note also that section 11350.1 explicitly preserves Dina's right to relitigate the issue of child support, and the related matter of the dependency exemption, in a subsequent action under the Family Law Act, and expressly provides that "[i]n that event, the court in those [subsequent] proceedings shall make an *independent* determination on the issue of sup-

---

[10]The dissenting opinion states that the district attorney did not address the merits of the allocation issue. On the contrary, the district attorney's written opposition stated: "The position of the custodial parent, Dina G., is that the defendant is not entitled to the credit because there are so many expenses associated with raising the child that (the father) refuses to pay." As noted, the trial court considered the income and expenses of both parents in its decision awarding the exemption to respondent. Thus, we find that Dina suffered no prejudice or denial of due process.

port which shall *supersede* the support order made pursuant to this section." (Italics added.) Thus, as the court in *County of Santa Clara* v. *Farnese* (1985) 183 Cal.App.3d 257 [237 Cal.Rptr. 457] trenchantly observed, an order under section 11350.1 "is not graven in stone." (183 Cal.App.3d at p. 265.) Dina, in short, is not bound by the allocation of the exemption in the section 11350.1 enforcement proceeding; she may initiate a subsequent action on her own behalf, and the court in that proceeding must make an "independent" determination of the issue, which shall "supersede" the earlier order.

The Attorney General and amicus curiae nevertheless assert that allocation of the dependency exemption in a section 11350.1 action may implicate tax law considerations beyond the expertise of the district attorney, and thereby prejudice the interests of the custodial parent. We note, however, that the matter here was not unduly complex; both parents were single, both had incomes limited to wages or commissions, and the only dependent involved was the one minor child. Moreover, to the extent that either the district attorney or the custodial parent is concerned that the latter's rights are not adequately represented, either one may seek to have the custodial parent made a party to the proceedings. Furthermore, the court is not obligated to decide the issue; if it concludes that the exemption question involves collateral matters or that the evidence before it is inadequate to decide the issue, it may simply decline to treat it and leave the parents to an independent action under the Family Law Act. (*County of San Joaquin* v. *Woods* (1989) 210 Cal.App.3d 56, 61 [258 Cal.Rptr. 110].)

The Attorney General and amicus curiae also express concern that the district attorney may be placed in a position of conflict or even potential liability if the relationship with the custodial parent is characterized as that of attorney/client; there may be circumstances, for example, where custody of the minor child changes and the district attorney is compelled to seek support from the parent whom it earlier "represented." We discern no such dilemma. The statutory scheme empowers the district attorney to establish, modify and enforce support obligations "in the name of the county on behalf of the child, children or caretaker parent." (§ 11350.1.) ■ The purpose of such actions is to provide a direct procedure for a county to recoup public assistance, and to assist parents with limited resources to enforce support obligations so that public funds are not again unnecessarily expended. (*City and County of San Francisco* v. *Thompson* (1985) 172 Cal.App.3d 652 [218 Cal.Rptr. 445]; *In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 298-300 [139 Cal.Rptr. 349].) Notwithstanding the collateral benefit to the custodial parent, the "client" in such actions remains the county.

In conclusion, we find no merit to the claim that the award of the dependency exemption in this case violated the due process rights of the custodial parent.

## CONCLUSION

The judgment of the Court of Appeal is affirmed and modified to provide that the matter be remanded to the superior court for entry of an order conditioning its award of support upon execution by the custodial parent of an appropriate waiver of the dependency exemption.

Lucas, C. J., Broussard, J., Panelli, J., and Baxter, J., concurred.

**MOSK, J.,** Dissenting.—I do not disagree with the majority that a court may, if appropriate and consistent with section 152(e) of the Internal Revenue Code, allocate a tax dependency exemption to a noncustodial parent by ordering the custodial parent to execute a declaration waiving the exemption.

I do not agree, however, that such an allocation may be ordered without giving the custodial parent notice and an opportunity to be heard on the issue. Unquestionably, a court could not order a noncustodial parent to pay child support without such requisites of due process. (See *Solberg* v. *Wenker* (1985) 163 Cal.App.3d 475, 478-479 [209 Cal.Rptr. 545] ["Judgments for paternity or child support, entered as a result of an agreement between the district attorney and a parent not represented by an attorney, are voidable if the unrepresented parent can establish that he or she was not advised by the district attorney of the right to trial on the questions of paternity and ability to support and that he or she was unaware of such rights and would not otherwise have executed the agreement."].) In my view, the custodial parent is entitled to equal due process protection.

The majority assert that here the custodial parent's due process rights were protected because the district attorney filed the child support action on her behalf, she submitted financial disclosure statements, she could have been called to testify as a witness, and she could relitigate the issue of the tax dependency exemption in a subsequent action. I am not convinced that the foregoing is sufficient under article I, section 7, subdivision (a) of the California Constitution.

In *Anderson* v. *Superior Court* (1989) 213 Cal.App.3d 1321 [262 Cal.Rptr. 405], the custodial parent appeared without counsel as a witness in a child support action initiated by the county against her estranged husband for reimbursement for aid to families with dependent children

(AFDC) benefits. On the basis of her testimony, the court found she had not met her support obligations and ordered her to undertake job searches or enter the state workfare program to avoid a reduction in her AFDC payments.

The Court of Appeal directed the court to vacate its order. It considered the three factors set forth in *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893], to determine what level of constitutional due process is required: " 'First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.' " (*Anderson* v. *Superior Court, supra,* 213 Cal.App.3d at p. 1330.) It also considered a fourth factor set forth in *People* v. *Ramirez* (1979) 25 Cal.3d 260, 267-268 [158 Cal.Rptr. 316, 599 P.2d 622], i.e., that persons subjected to deprivatory governmental action be treated with respect and dignity. (213 Cal.App.3d at p. 1330.) The Court of Appeal there concluded that the trial court violated the custodial parent's rights when it failed to require adequate and timely notice of the family law procedure through which her AFDC benefits could be reduced or lost.

Applying these factors here leads to the inescapable conclusion that the custodial parent's due process rights were violated. First, the private interest at stake was the tax dependency exemption. As the majority concede, this exemption provides a financial benefit to the parent entitled to claim it. (Maj. opn., *ante,* at p. 1279.) Its allocation by the court may in fact affect the entire financial position of each party. (See *Sarver* v. *Dathe* (S.D. 1989) 439 N.W.2d 548, 551; *Baird* v. *Baird* (Mo.Ct.App. 1988) 760 S.W.2d 571, 573.) Thus affected were the custodial parent's economic interests, i.e., the property referred to in the constitutional due process provision.[1]

Second, the potential risk of an erroneous deprivation was substantial. The custodial parent was not represented by the district attorney, nor was her position on the question of the dependency exemption urged to the trial

---

[1] The trial court was under the erroneous impression that because the custodial parent was earning under $10,000 a year, she was exempt from income tax and unaffected by any reallocation in the dependency exemption. Yet the custodial parent's income declaration stated her gross income was $1,024 a month. The court's miscalculation illustrates the problem of not allowing the custodial parent the opportunity to be heard. The district attorney recognized this in his argument to the court: "Well, [whether the custodial parent receives a tax benefit is] one of the issues that we feel is raised by their request. That's a tax law question, Your Honor, and it's inappropriate to address it here. And she's not a party, the County's a party. She's not."

court. Contrary to the majority's assertion, the district attorney did not present the custodial parent's arguments against reallocating the exemption; instead he argued that the issue should not be considered in the support action. For example, he wrote in his memorandum of points and authorities: "The position of the District Attorney is that issues of a dependency deduction for tax purposes are governed by state and federal tax law; they should not even be considered in a support action brought by the District Attorney." And he used the same strategy at the hearing: although he casually mentioned the custodial parent's view, he primarily argued that the question was not properly before the court. It follows that the custodial parent in fact had no opportunity to be heard or to be represented by counsel on this significant property issue.

Third, it would not have been unduly burdensome to have allowed the custodial parent an opportunity to be heard. The state's interest in a support proceeding " 'is to insure that the moneys disbursed by the county for the aid of a needy child be returned to the public source from which they are disbursed.' " (*County of Yolo* v. *Francis* (1986) 179 Cal.App.3d 647, 655 [224 Cal.Rptr. 585].) The state also has an interest in ensuring adequate support for children following their parents' dissolution of marriage. (*Anderson* v. *Superior Court, supra,* 213 Cal.App.3d 1321, 1331.) Neither of these interests would be undermined by giving the custodial parent notice and an opportunity to be heard on an issue that affects her property and welfare. Thus, although not statutorily obliged to do so, the district attorney could have then appropriately argued against the reallocation of the tax exemption (see *Worth* v. *Superior Court* (1989) 207 Cal.App.3d 1150, 1155 [255 Cal.Rptr. 304]), or could have allowed the custodial parent to appear in propria persona or to retain her own counsel. The benefits of affording such process would have far outweighed any conceivable burden.

Finally, it is true that the custodial parent may subsequently institute an independent action to relitigate the issue of the exemption, if she can find the means to do so. However, for " ' "government to dispose of a person's significant interests without offering him [or her] a chance to be heard is to risk treating him [or her] as a nonperson, an object, rather than a respected, participating citizen." ' " (*Anderson* v. *Superior Court, supra,* 213 Cal.App.3d at p. 1330, quoting *People* v. *Ramirez, supra,* 25 Cal.3d 260 at pp. 267-268.) Especially in circumstances, such as here, in which the custodial parent received public support and is dependent on the county to assert her need for increased child support, we should not so lightly allow a summary deprivation of her interests. I commend the Attorney General and the district attorney for attempting to protect those interests. This court should do no less.

To conclude, the court's allocation of the tax dependency exemption to the noncustodial parent, although arguably consistent with statutory law, violated the custodial parent's constitutional due process rights. I would reverse the judgment of the Court of Appeal.

Kennard, J., concurred.